**Larry MICK, et al., Plaintiffs,**

v.

**LEVEL PROPANE GASES, INC., Defendant.**

No. 2:98–CV–959.

United States District Court, S.D. Ohio, Eastern Division.

Oct. 26, 2001.

Joseph F. Murray, Geoffrey J. Moul, Murray Murphy Moul & Basil, Kimberly M. Skaggs, Equal Justice Foundation, Columbus, OH, Gary Michael Smith, Graham McClelland Ransbottom, Dover, OH, John Ashley Bell, Cincinnati, OH, for plaintiffs.

Thomas Brennan Ridgley, Vorys Sater Seymour & Pease, John Ryan Gall, Squire

Sanders & Dempsey, Columbus, OH, Amanda Martinsek, Vorys Sater Seymour & Pease, Cleveland, OH, for defendant.

### OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court on the Plaintiffs' Motion for Class Certification pursuant to Fed.R.Civ.P. 23(b)(3) (Doc. # 93) and on the Plaintiffs' Motion for Leave to Amend the Complaint to include the following individuals as Representatives of the Plaintiff Class: Robert Recker, Emmett Klein, Karl Lechner and Douglas Mohr. (Doc. # 61). For the reasons that follow, the Plaintiffs' motions are granted.

### I.

This action was filed in 1998 on behalf of all Ohio residential consumers who, at any time on or after September 1, 1994, are, have been, or will be customers of Defendant Level Propane Gases, Inc. ["Level"]. Plaintiffs' proffered amended complaint asserts claims pursuant to the Equal Credit Opportunity Act ["ECOA"], 15 U.S.C. § 1691, *et seq.;* the Fair Credit Reporting Act ["FCRA"], 15 U.S.C. § 1681, *et seq.;* and the Ohio Consumer Sales Practices Act ["CSPA"], O.R.C. § 1345.01, *et seq.* Plaintiffs also advance claims under R.C. § 1302.01 as well as common law claims for unconscionability, fraud and deceit.

Plaintiffs' original complaint names Larry and Dorothy Mick, Mary Hiatt and Emma Anderson as representatives of the Plaintiff class. The class was certified by this Court under Fed.R.Civ.P. 23(a) and 23(b)(2) on September 29, 1999.[1] On April 6, 2001, this Court issued class-wide preliminary injunctive relief to a limited group of Plaintiffs on their claims that Level failed to adhere to the "firm" or "guaranteed" pricing referenced in its consumer contracts for propane service.

Since the issuance of injunctive relief, the Plaintiffs moved pursuant to Rule 15(a) to amend their complaint to add four individuals as class representatives. Three of the four individuals offered testimony at the Preliminary Injunction hearing in March 2001. Plaintiffs "seek to add [the individuals] to assure Defendant that it will have every opportunity to address the specific allegations of these witnesses who ... will tell a story common to tens of thousands of others." (*Plaintiffs' Reply* at 2). Defendant Level opposes Plaintiffs' motion and characterizes it as an attempt to raise new claims and to circumvent the requirements of Rule 23.

Plaintiffs assert that, although their request for leave to amend to include four additional individuals as class representatives may be untimely, the Defendant is in no way prejudiced by the inclusion of the individuals. Furthermore, Plaintiffs contend that the claims raised by the individual Plaintiffs are typical of the entire class.

In contrast, Defendant Level contends that the claims are new and are not typical of the class. Level views the issues of certification narrowly. Thus, Level asserts that the claims presented by the four individuals are a "significant departure" from the claims previously certified and argues that the "new representatives and new claims must be evaluated pursuant to Rule 23." (*Memorandum contra* at 4). The Plaintiffs have also filed a separate motion for class certification under Rule 23(b)(3), which is presently before the Court for review.[2]

---

1. The Court also certified two subclasses, specifically: (1) all Ohio residential consumers of propane as to whom, at any time on or after October 1, 1997, Level took or participated in adverse action based in whole or in part upon information in a consumer credit report or from a third party, as those terms are defined in 15 U.S.C. § 1681, *et seq.* and (2) all Ohio residential consumers of propane who, at any time on or after September 1, 1996, did or will (a) sign a "Consumer Credit Application and Agreement for Propane Service and Equipment Lease" with Level similar to those attached to the complaint or (b) be applicants of Level for credit, and/or the sub-

ject of adverse action by Level, as those terms are defined in Regulation B, 12 C.F.R. § 202. (*See Opinion and Order,* Sept. 29, 1999 at 32–33).

2. The Court notes that Plaintiffs sought certification under Rule 23(b)(3) in September 1998. The Court's Order, however, addressed certification only under Rule 23(b)(2). Contrary to Defendant's assertion (*See Memorandum contra Rule 23(b)(3) Certification* at 3), the Court's failure to address certification under Rule 23(b)(3) *was not* a decision, explicit or implicit, that such certification is inappropriate. At this juncture, the Court considers Rule 23(b)(3) certification

## II.

In the September 29, 1999 *Opinion and Order*, this Court concluded as follows with respect to the claims of the Plaintiff class:

[P]laintiffs have presented the common issues of whether Level's standard customer contracts are false, deceptive and misleading because they use terms such as "guaranteed price" and "firm price" yet contain boilerplate language that qualifies these terms and whether Level's marketing strategy of emphasizing low, guaranteed prices is false, deceptive and misleading.

*Opinion and Order*, September 29, 1999 at 26–27.

This Court further held that the claims of the currently named Plaintiffs were typical of the class because "if the named plaintiffs prove that Level's use of the terms 'guaranteed price' and 'firm price' in its standard contracts and its advertising is false, deceptive, and misleading, then Level will be ordered to amend its practices and policies as applied to all proposed class members." (*Id.* at 29).

The Court will first consider the proposed claims of the four individuals which Plaintiffs seek to add as named representatives to the current class. Robert Recker, who testified at the March 2001 Preliminary Injunction hearing, asserts that on June 3, 1999, Level offered to sell a 1000 gallon propane tank at a price of $.59 per gallon "firm until spring 2001." (*Proposed Amended Complaint* at ¶ 147). Level further offered a pre-buy for 2000 gallons of propane at a price of $.499 per gallon. (*Id.* at ¶ 148). Recker accepted the prebuy but Level delivered only 1,752 gallons of propane. Recker claims that Level failed to inform him that the prepaid gallons had to be consumed within one year. (*Id.* at ¶¶ 149, 151).

Emmett Klein, who also testified at the March 2001 hearing, was one of many Level consumers who received the April 5, 2000 letter guaranteeing a price per gallon "firm until" spring 2001. (*Id.* at ¶ 154). Klein alleges that Level failed to disclose that the price guaranteed in the April letter was conditioned on Level's ability to secure propane supply contracts at what it deemed to be the lowest possible price. (*Id.* at ¶ 156). Klein further alleges that he was charged a price per gallon "more than double that which Level had guaranteed in the April 2000 letter and more than $.10 higher than the price charged to Klein the previous year." (*Id.* at ¶ 160).

Douglas Mohr contracted with Level in February 1996 for the lease of a 500 gallon propane tank. Mohr contends that this tank was much larger than necessary for his home. Level, however, neglected to inform Mohr that "underutilization charges would be imposed ... if he selected too large a tank and then failed to use a set amount of gas during a year period." (*Id.* at ¶ 165). Mohr alleges that the contract language pertaining to the underutilization fee is "deceptive, false and misleading." (*Id.* at ¶ 167).

Charles Lechner, who testified at the March 2001 hearing, makes a similar claim with respect to the underutilization fee provision in Level's contract. (*Id.* at ¶ 166). In October 2000, Level substituted Lechner's 500 gallon tank for a smaller tank and purportedly guaranteed a price per gallon of $1.399 firm for one year. (*Id.* at ¶ 169). In December 2000, Lechner called Level to report that his tank was low. When the tank reached the zero per cent mark, the tank was refilled at a price of $2.40 per gallon. (*Id.* at ¶ 170).

Defendant Level argues that the foregoing assertions by Plaintiffs Recker, Klein, Mohr and Lechner do not fall within the scope of the claims previously certified by the Court. The Court concludes that, although the claims of the four proposed representatives are not identical to the claims of the current representatives, at the heart of all the claims is whether Level's standard contracts and marketing strategies employed as to all class Plaintiffs in 1999 and early 2000 are "false, deceptive and misleading." (*Id.* at 26–27). Indeed, as this Court has previously observed, the named Plaintiffs'

---

for the first time and the Court will treat Plaintiff's July 30, 2001 filing is styled as a "Third Brief in Support of Class Certification pursuant

to Fed.R.Civ.P. 23(b)(3)," as a motion for class certification under said rule.

claims need not be identical to the claims and defenses of the other members of the putative class in order to meet the requirements of commonality and typicality, as stated in Rule 23(a)(2), (3). (*Id.* at 27, citing *Putnam v. Davies,* 169 F.R.D. 89 (S.D.Ohio 1996)). What is required is that the claims present at least one question common to the class. *See Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998) (*en banc*) (citing *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1080 (6th Cir.1996)). In this case the common question is whether Level's contracts and marketing strategies amount to false, deceptive and misleading practices under the theories advanced by Plaintiffs. In sum, the Court rejects the Defendant's assertion that the claims of the four proposed class representatives are "brand new." (*Defendant's Memorandum contra Motion to Amend* at 3).

■ The Court does conclude, however, that adding the four proposed individuals as representatives under the class as it is currently certified, is impermissible in light of the scope of relief sought. As the Defendant points out, the proposed new class representatives seek recovery of compensatory damages in connection with their claims. Under Rule 23(b)(2), however, compensatory damages may be recovered, if at all, only if such damages are incidental to the injunctive and declaratory relief sought. *See Butler v. Sterling, Inc.,* No. 98–3223, 2000 WL 353502 at *6 (6th Cir. March 31, 2000), citing *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 410 (5th Cir.1998). If damages are sought on behalf of members of the plaintiff class who are not entitled to injunctive relief, the Court must consider whether class certification under Rule 23(b)(3) is appropriate.

In seeking certification for damages claims, the Plaintiffs contend that questions of law and fact common to the class, in particular, questions concerning the "nature,

customary use and legality of Level's standard consumer forms and routine marketing practices" (*Plaintiffs' Motion* at 5) predominate over any individualized questions.

Level opposes certification under Rule 23(b)(3) for several reasons. Level devotes an exhaustive number of pages of its memorandum *contra* to the argument that, for various reasons, neither the original nor the proposed class representatives can satisfy the requirements of Rule 23(a).[3]

Level first contends that the four proposed individuals cannot adequately represent the class for purposes of Rule 23(a)(4) because they allegedly have inherent financial antagonisms with the rest of the class and because they allegedly are unfamiliar with the nature of the claims being raised. The Court rejects the latter argument as a basis for concluding that the proposed individuals would provide inadequate representation. As the evidence presented at the injunction hearing demonstrates, these individuals are familiar with Level's practices and the nature of the claims advanced.

■ Rule 23(a)(4) allows for certification only if "the representative parties will fairly and adequately protect the interests of the class." Two criteria guide the determination of whether this requirement is satisfied. First, "the representative must have common interests with unnamed members of the class" and second, "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.,* 532 F.2d 511, 525 (6th Cir.1976).

■ Level points out that Mr. Klein and Mr. Mohr are no longer Level customers, and that Mr. Recker and Dr. Lechner have reconciled accounts, thereby allegedly making their interests antagonistic to those who continue to seek actual damages.[4] The

---

**3.** This Court concluded, over two years ago, that the requirements of Rule 23(a) were satisfied as to the original class members. While the Court has considered Level's current arguments, the Court finds no reason to alter its prior decision with respect to the original class representatives.

**4.** In support of this position, Level points out that certain members of the class are no longer

Level customers and "do not care if payment of damages financially cripples the corporation." (*Memorandum contra* at 23). Level further points out that class members who are customers have an interest in Level being able to honor its contractual obligations and that future customers have an interest in Level being able to offer services at low rates. (*Id.* at 24).

Court concludes that these facts are not fatal to satisfaction of Rule 23(a)(4). Although the damage to members of the plaintiff class certainly differs in degree, the fact remains that the proposed representatives' claims are typical of the class because the harm suffered is of the same type.

█ An allegation regarding a potential conflict among class members as to the apportionment of damages is, in general, insufficient to defeat class certification. *See* 1 Newberg on Class Actions at § 3.16 (3d ed.1992). A conflict as to damages must be "so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation" in order to defeat certification. *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 326, 337 (E.D.Mich.2001) (internal quotation omitted).

█ The Court does not find any such conflict in this case. Level contends that putative class members may not represent customers with delinquent bills. The fact that some members of the class may have delinquent bills and the class representatives do not is of no moment. Level has not volunteered to forego collection of the delinquent accounts. The actions of the class will not cause any financial expense not already facing class members whose bills are in arrears. Furthermore, the potential for counterclaims as to some members does not preclude certification under Rule 23(b)(3). *See* 1 Newberg on Class Actions at § 4–34 (3d ed.1992). In sum, the Court finds no basis from which to conclude that the four individuals could not adequately represent the class.

Defendant Level also contends that the proposed class representatives' claims do not satisfy the typicality and commonality requirements of Rule 23(a)(2)–(3). In particular, Level points out that the Plaintiffs' claims derive from a variety of written and/or oral representations made by Level. As it did over two years ago, Level analogizes the situation at bar to that presented in *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir.1998). In that case, the Sixth Circuit held that a class of early retirees who alleged that the denial of lifetime health benefits was in violation of the Employee Retirement Income Security Act of 1974 ["ERISA"] failed to satisfy the typicality and commonality requirements of Rule 23(a) because the plaintiffs' claims were premised upon theories of bi-lateral contract and estoppel. The Sixth Circuit concluded that, because success on such theories rested upon individualized sources of proof, the claims were not susceptible to resolution on a class basis.

As the Court stated in its September 29, 1999 *Opinion and Order*, the situation in *Sprague* is not analogous to the situation at bar. In this case, while Plaintiffs may have entered into differing contractual relationships with Level, the common question of whether Level's practices are false, misleading and deceptive remains for resolution. Thus, the Court finds *Sprague* distinguishable. Because a common question remains at bar, this Court concludes that the proposed representatives' claims are typical of the class.

█ The Court also concludes that the claims satisfy the commonality requirement. The claims of class members need not be factually identical in order to satisfy the commonality requirement. *See Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D.Ohio 1996). The requirement is satisfied because the Plaintiffs' claims involve whether Level's practices are false, misleading and deceptive. Level argues that the fact that Plaintiffs submitted at least 250 declarations from class members in connection with the preliminary injunction request demonstrates that the claims are different. This Court disagrees. The exhibits demonstrate the differing degree of damages to which the Plaintiffs may be entitled; the evidence does not demonstrate the lack of commonality and typicality of the claim at issue regarding the allegedly false, deceptive and misleading nature of Level's practices.

█ Level also contends that the proposed class representatives fail to represent a sufficiently numerous group of individuals for purposes of Rule 23(a)(1). Under the rule, the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). There is no strict test for determining whether this requirement is satisfied. "Rather, [t]he numerosity requirement requires examination of the specific

facts of each case and imposes no absolute limitations." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996), quoting *General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Factors which the Court may consider include judicial economy, geographical location of class members and the financial resources of the class members. *See Jackson v. Foley,* 156 F.R.D. 538, 542 (E.D.N.Y. 1994) (citation omitted).

Level apparently does not dispute that the class at bar is indeed numerous[5]; rather, Level contends that the proposed four class representatives "must demonstrate how many other customers share the representatives' damages claims." (*Memorandum contra* at 45). Level goes on to argue that the four individuals have failed to make such a showing. As the Court stated *supra,* the fact that the proposed class representatives and class members have differing damage claims is not fatal to the issue of certification under Rule 23. It is the nature of the harm suffered, not the degree of damage recoverable, that determines whether the class representatives can provide adequate representation. Furthermore, representatives need not have identical claims to class members in order to satisfy the commonality and typicality requirements of Rule 23. The Court has concluded that the four proposed representatives are adequate. In addition, Plaintiffs have clearly shown that the class is indeed numerous. Thus, the Court rejects Level's assertion that Rule 23(a)(1) has not been satisfied.

In sum, the Court concludes that the factors outlined in Rule 23(a) are satisfied as to the four proposed representatives of the Plaintiff class. The Court will now consider whether Rule 23(b)(3) is satisfied.

Rule 23(b)(3) provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions af-fecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

"Subdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re American Medical Systems, Inc.,* 75 F.3d at 1084, citing 1 Newberg on Class Actions § 3.10, at 3–56. The predominance and superiority requirements of Rule 23(b)(3) are considered in light of the factors outlined in the rule. The factors are not intended to be exhaustive. *See* 1 Newberg at § 4.28.

▪ With regard to predominance, "[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Id.* at § 4.25. Indeed, as the Sixth Circuit observed, "the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action [under Rule 23(b)(3)] is impermissible." *In re American Medical Systems, Inc.,* 75 F.3d at 1084.

In this case, Level argues that because the Plaintiffs' claims "do not present 'identical' fact patterns" that Plaintiffs fail to meet the predominance requirement. (*Memorandum contra* at 50). Although the predominance requirement is indeed "stringent," this Court

---

**5.** It is undisputed that the main class is composed of thousands of individuals who have been customers of Level since 1994. In addition, the subclasses number in the hundreds of individuals. (*See Opinion and Order,* September 29, 1999 at 21).

rejects Level's argument that the predominance test requires identical facts. As Plaintiffs point out, certification would never occur if this were the requirement. The Court recognizes that the amount of recovery will differ for members of the Plaintiff class; however, as the United States Supreme Court has observed, "[w]hile the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), quoting Kaplan, A Prefatory Note, 10 B.C. Ind. & Com. L.Rev. 497 (1969). This principle clearly applies in the case at bar. As evidenced at the Preliminary Injunction hearing earlier this year, the Plaintiff class is comprised of a group of individuals who, by themselves, would likely not challenge the allegedly deceptive marketing strategies of Defendant Level.

This Court concludes that individual issues do not predominate Plaintiffs' class claims. In particular, the Court rejects Level's argument that Plaintiffs' claims for fraud and deceit cannot be certified under Rule 23(b)(3). According to Level, individual issues predominate because proof of individual reliance is required in order to establish claims for fraud and deceit. Level also points out that the class claims are governed by at least seven different contracts.

The existence of different contracts does not, however, preclude relief on a class basis when the conduct complained of centers on a common issue—here, whether Level's practices were deceptive. Moreover, "[w]hen a common fraud is perpetrated on a class of persons, they should be able to pursue an avenue of proof that does not focus on questions affecting only individual members.... [P]roof of reliance may be sufficiently established by inference or presumption." *Pyles v. Johnson*, No. 00CA15, —— N.E.2d ——, 2001 WL 639158 (Ohio App. June 4, 2001) (internal citation omitted). Thus, the Court concludes that Plaintiffs' claims for fraud and deceit can be certified under Rule 23(b)(3)

because the predominant question is whether Level engaged in misleading and deceptive sales practices.

In addition to the "predominance" requirement, certification under Rule 23(b)(3) requires that a class action be the superior method for adjudicating the claims raised. "The procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1196–97 (6th Cir.1988). Actions premised upon a single disaster or course of conduct are appropriately certified under Rule 23(b)(3) despite the fact that individual damage claims differ. *Id.*

In this case, the Court concludes that the class action device is the superior method for adjudicating Plaintiffs' claims that Level engaged in allegedly deceptive practices. While Level argues that certification will require the Court to conduct "mini-trials" because the claims are governed by different contracts, the Court finds that the same does not preclude certification. As the Court stated *supra*, the common issue in this case is whether Level engaged in deceptive practices for purposes of the statutory claims presented. Furthermore, the Court observes that resolution of liability may be bifurcated from resolution of the more individualized damage issues in order to facilitate an orderly management of the case. In sum, the Court rejects Level's assertion that a class action is not the superior method for resolving Plaintiffs' claims.

In light of the foregoing, the Court concludes that Plaintiffs' claims are properly certified under Rule 23(b)(3). The Court further concludes that addition of the proposed class representatives is appropriate and that amendment of the complaint is in accordance with Rule 15(a).

Under Rule 15, a pleading may be amended "once as a matter of course at any time before a responsive pleading is served .... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In

the absence of evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party" leave should be freely given. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Perkins v. American Electric Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir.2001).

The Court finds no evidence of bad faith or dilatory motive on the Plaintiffs' part in presenting the motion. Furthermore, the Court finds that amendment would not unduly prejudice the Defendant in any way. Many of the allegations raised in the proposed amended complaint were addressed at the Preliminary Injunction hearing earlier this year.

### IV.

The Plaintiffs' Motion for Leave to Amend the Complaint (Doc. # 61) is **GRANTED**. The Clerk is **DIRECTED** to file the tendered Amended Complaint which is attached to the Plaintiffs' motion. Plaintiffs' Motion for Class Certification under Rule 23(b)(3) (Doc. # 93) is also **GRANTED**.

The parties shall promptly confer with each other regarding the Notice to be issued to the class under Rule 23(c)(2). The parties are **DIRECTED** to submit to the Court, within thirty (30) days of the date of this Order, such proposed Notice for the plaintiff class. The Plaintiff is **DIRECTED** to submit a statement regarding the scope of the class and the number of anticipated members to whom Notice will be sent. The Court will schedule a Status Conference following the parties' submissions.

**IT IS SO ORDERED.**