Robert L. VIOLETTE, et al., Plaintiffs,

v.

P.A. DAYS, INC., et al., Defendants.

No. C2–01–1254.

United States District Court,
S.D. Ohio,
Eastern Division.

March 27, 2003.

Joseph F. Murray, Geoffrey J. Moul, Murray Murphy Moul & Basil, Columbus, OH, for plaintiffs.

Sarah Daggett Morrison, Chester Willcox & Saxbe, Columbus, OH, Jonathan R. Fulkerson, Columbus, OH, Jay Fred McKirahan, Whann & Associates, Dublin, OH, for defendants.

Robert F. Dalton, Westerville, OH, pro se.

### OPINION AND ORDER

SARGUS, District Judge.

On December 18, 2001, Robert L. Violette and Teresa Courts filed this action on behalf of themselves and others similarly situated asserting that defendant P.A. Days, Inc. violated the federal Truth In Lending Act and the Ohio Consumer Sales Practices Act in connection with the sale of automobiles on credit. On January 22, 2002, Mr. Violette and Ms. Courts filed an amended complaint adding William Stover, Mickey Weaver, and Kenneth and Carolyn Adkins as named plaintiffs against an additional defendant, Ricart Properties, Inc. On June 28, 2002, Mr. Stover voluntarily withdrew as a party to the action. This matter is currently before the Court on Mr. Violette's and Ms. Courts' July 31, 2002 motion to certify a class action against P.A. Days and on Ms. Weaver's and Mr. and Mrs. Adkins' July 31, 2002 motion to certify a class

action against Ricart Properties pursuant to Fed.R.Civ.P. 23. On November 12, 2002, both P.A. Days and Ricart Properties responded to the respective motions. On December 9, 2002, Mr. Violette and Ms. Courts replied, and on January 3, 2003, Ms. Weaver and Mr. and Mrs. Adkins replied.

Also pending before the Court is Plaintiffs' January 2, 2003 motion to compel discovery, or in the alternative, to strike Defendants' bona fide error defense. On January 21, 2003, Defendants filed a response and also a motion for the Court to strike the exhibits attached to Plaintiffs' motion. The final motion for consideration is Defendants' February 21, 2003 motion for partial reconsideration of the Court's February 12, 2003 Order regarding the confidentiality of certain deposition testimony.

For the following reasons, both motions to certify classes will be granted. Plaintiffs' motion to compel discovery or to strike Defendants' bona fide error defense will be denied without prejudice. Defendants' motion to strike the exhibits to Plaintiff's motion will be denied as moot. Defendants' motion for partial reconsideration will be granted.

## I.

The following statement of facts is taken from the amended complaint, Plaintiffs' motions to certify, Defendants' responses, and other memoranda filed in connection with the motions for class certification. Plaintiffs assert that P.A. Days and Ricart Properties have a pattern and practice of engaging in deceptive and unfair trade practices, in violation of the Ohio Consumer Sales Practices Act, R.C. §§ 1345 et seq., the federal Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., and the Ohio Retail Installment Sales Act, R.C. §§ 1317 et seq. Plaintiffs also assert claims of unjust enrichment.

The claims against P.A. Days center on P.A. Days' sale of used automobiles to customers with low income and/or poor credit ratings allegedly at prices substantially in excess of the value of the automobiles and with an annual percentage rate ("APR") above the legal limit of 25 percent. Further, Plaintiffs allege that the sale of Theft–Gard, an anti-theft etching identification program,

with every automobile amounts to the unauthorized sale of insurance by P.A. Days. Finally, Plaintiffs assert that P.A. Days failed to apply for transfer of their respective titles within 30 days, in violation of state law.

The claims against Ricart Properties focus on Ricart Properties' alleged practice of automatically imposing a charge for the sale of Theft–Gard and for its failure to make the required disclosures under the Truth in Lending Act and the Ohio Consumer Sales Practices Act.

It is on the basis of these facts that the motions for class certification will be decided.

## II.

The Sixth Circuit requires a district court carefully to consider whether the requirements of Rule 23 are satisfied prior to certifying a class. See Shipp v. Memphis Area Office, Tenn. Dep't of Employment, 581 F.2d 1167 (6th Cir.1978), cert. denied, 440 U.S. 980, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979); Alexander v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers, AFL–CIO, 565 F.2d 1364 (6th Cir.1977), cert. denied, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978); Senter v. General Motors Corp., 532 F.2d 511 (6th Cir.), cert. denied, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). The Court has broad discretion in determining whether an action is maintainable as a class action. See Kentucky Educators Public Affairs Council v. Kentucky Registry of Election Finance, 677 F.2d 1125, 1135 (6th Cir.1982). However, that discretion must be exercised within the framework of Rule 23. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); Califano v. Yamasaki, 442 U.S. 682, 703, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). The party seeking certification as a class has the burden of establishing the prerequisites. See Senter, 532 F.2d at 522; Akron Center for Reproductive Health v. Rosen, 110 F.R.D. 576, 580 (N.D.Ohio 1986); Basile v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 105 F.R.D. 506, 507 (S.D.Ohio 1985). To meet this burden, plaintiffs must show that all four of the prerequisites of Rule 23(a) are satisfied, and then must dem-

onstrate that the class falls within one of the subcategories of Rule 23(b). *See Senter,* 532 F.2d at 522; *Basile,* 105 F.R.D. at 507. However, "[a]lthough the plaintiff bears the burden of proof, the court must not inquire into the merits of the underlying claims of the class representative... A court should accept as true the plaintiff's allegations in the complaint." *Reeb v. Ohio Dep't of Rehabilitation & Correction,* 203 F.R.D. 315, 320 (S.D.Ohio 2001).

In the case at bar, Plaintiffs assert that the prerequisites for class certification under Rule 23(a) have been met and that class certification under Rule 23(b)(3) is appropriate. The following discussion will analyze each of the prerequisites for class certification, and then will determine whether, if those prerequisites have been met, certification of a class under Rule 23(b)(3) is appropriate.

### A. Certification of Classes Against P.A. Days

Prior to an analysis of the Rule 23(a) prerequisites, the "court must first consider whether a precisely defined class exists." *Reeb,* 203 F.R.D. at 319 (citing *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Reid v. White Motor Corp.,* 886 F.2d 1462, 1471 (6th Cir.1989)). Key elements to defining a class include: "(1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way, and (2) facilitating a court's ability to ascertain its membership in some objective manner." *Reeb,* 203 F.R.D. at 319 (citing *Crosby v. Soc. Sec. Admin.,* 796 F.2d 576, 580 (1st Cir.1986)). Although such a finding is not specifically mentioned in Rule 23, "the definition of a class is an essential prerequisite to maintaining a class action." *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976).

In their amended complaint, Mr. Violette and Ms. Courts seek certification of three classes and one subclass in the action against P.A. Days. Proposed Class One consists of "All persons to whom P.A. Days sold a vehicle primarily for personal, family or household purposes on credit through P.A. Days' retail installment contract on or after Decem-

ber 18, 1999." Proposed Class Two consists of "All persons to whom P.A. Days sold Theft–Gard on or after December 18, 1995." Mr. Violette and Ms. Courts also seek certification of a subclass to Class Two in order to account for the Ohio Consumer Sales Practices Act's two-year statute of limitations. Proposed Subclass One to Class Two would consist of "All persons to whom P.A. Days sold Theft–Gard on or after December 18, 1999." Finally, proposed Class Three consists of "All persons to whom P.A. Days sold a vehicle primarily for personal, family or household purposes on or after December 18, 1999, but failed to apply for the transfer of title within 30 days of purchase."

The Court concludes that the proposed classes and subclass are precisely defined in that they are limited to customers who, within a particular time frame, purchased vehicles on credit from P.A. Days and/or were sold Theft–Gard by P.A. Days and/or for whom P.A. Days failed to apply for transfer of title within 30 days. Therefore, the Court may readily determine which of P.A. Days' customers fall within the proposed classes and subclass.

#### 1. Numerosity

Fed.R.Civ.P. 23(a)(1) requires plaintiffs to show first that "the class is so numerous that joinder of all members is impracticable...." There is no bright line numerical test by which the district court can determine when the numerosity requirement is satisfied, and the Sixth Circuit has noted that a class does not require any specific number of members: "Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter,* 532 F.2d at 523 n. 24; *see also Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 131 (1st Cir.1985), *cert. denied* 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). The key to determining whether the numerosity requirement of Rule 23(a)(1) is satisfied rests on the impracticability of joining potential class members.

Satisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong hardship or inconvenience in litigation if join-

der is required. *See Arkansas Educ. Ass'n v. Board of Educ. of Portland,* 446 F.2d 763 (8th Cir.1971); *Samuel v. University of Pittsburgh,* 56 F.R.D. 435 (W.D.Pa.1972). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). "[T]he duty of establishing... particular circumstances rests with the party who asserts the existence of the class and that party must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Rex v. Owens,* 585 F.2d 432, 436 (10th Cir.1978). Nonetheless, it is permissible for a plaintiff to make reasonable inferences drawn from available facts and an "information monopoly [by the party opposing the class] will not stand in the way of persons seeking relief." *Jackson v. Foley,* 156 F.R.D. 538, 542 (E.D.N.Y.1994). As noted, impracticality of joinder depends not only on numbers; other factors which a court may consider include judicial economy, geographical dispersion of class members, and the financial resources of class members. *Id.* at 542, *citing Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir.1993).

■ As to proposed Class One, customers who bought vehicles on credit, P.A. Days admits that more than 5000 customers entered into credit transactions with P.A. Days in the year 2000 alone. *See* Response to Second Request for Admissions at 4. As to proposed Class Two and Subclass One to Class Two, customers to whom P.A. Days sold Theft–Gard, P.A. Days admits that it sold Theft–Gard to over 5000 customers between December 18, 2000 and May 31, 2002. *See id.* As to proposed Class Three, customers for whom P.A. Days did not apply for transfer of title within 30 days of purchase, certified records from the Ohio Bureau of Motor Vehicles show that during the year 2000, there were more than 1500 transactions in which P.A. Days failed to apply for transfer of title within 30 days of purchase. *See* Exh. 2 to Plaintiff Violette's and Courts' Motion to Certify Classes Against P.A. Days.

Based on P.A. Days' admissions and the certified record from the Ohio Bureau of Motor Vehicles, it is clear that the proposed classes and subclass are "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Plaintiffs would incur a substantial hardship if required to join all potential plaintiffs. Therefore, the numerosity requirement is satisfied.

### 2. *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The claims of the potential class members need not be factually identical. *See Putnam v. Davies,* 169 F.R.D. 89, 93 (S.D.Ohio 1996). Rather, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Id.; see also Mayo v. Sears, Roebuck & Co.,* 148 F.R.D. 576, 580 (S.D.Ohio 1993). Although Rule 23(a)(2) speaks of "questions" in the plural, there need only be one question common to the class. *See Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998) (en banc) (*citing American Medical,* 75 F.3d at 1080). The mere fact that questions peculiar to individual class members could remain does not necessarily defeat a finding of commonality. *See Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988); *Bacon v. Honda of America Mfg., Inc.,* 205 F.R.D. 466, 476 (S.D.Ohio 2001).

Conclusory allegations of commonality are insufficient to satisfy the burden of proof on certification. *See Falcon,* 457 U.S. at 157, 102 S.Ct. 2364; *American Medical,* 75 F.3d at 1081. The class representatives must enumerate questions of law or fact common to the class, "the resolution of which will advance the litigation." *Sprague,* 133 F.3d at 397.

■ Plaintiffs allege that as to proposed Class One, the common questions of fact include the nature of the forms used by P.A. Days, and whether P.A. Days failed accurately to disclose the annual percentage rate. The common questions of law include the legality of P.A. Days' Retail Installment Sales Contract and Security Agreement form, whether various fees imposed are per-

mitted by the Ohio Retail Installment Sales Act, whether P.A. Days' disclosures are in violation of the federal Truth In Lending Act, and whether Theft–Gard must be disclosed as part of the finance charge disclosure.

■ As to proposed Class Two and Subclass One to Class Two, the common question of fact concerns how the charge for Theft–Gard was disclosed. The common questions of law include whether Theft–Gard must be disclosed as part of the finance charge disclosure under the federal Truth In Lending Act, whether the sale of Theft–Gard was made through practices in violation of Ohio law, and whether Theft–Gard constitutes "insurance" under Ohio law.

■ As to proposed Class Three, the common question of fact is whether P.A. Days failed to apply for transfer of title within 30 days of purchase. The common question of law is whether failure to apply for transfer of title within 30 days of purchase is a violation of Ohio law.

These common issues of fact and law are at the heart of the litigation concerning P.A. Days' policies and practices and would apply to all customers who fall within a particular class. *See Putnam,* 169 F.R.D. at 93. Therefore, the commonality requirement is satisfied.

### 3. *Typicality*

■ Rule 23(a)(3) requires that the claims of the class representative be "typical of the claims...of the class." The typicality requirement focuses on the type of injury suffered by the class members and the interests of the various class members. *See Senter,* 532 F.2d at 525. The commonality and typicality requirements are closely related in that they each serve to assist in the determination whether the claim of the named plaintiff and those of the class are so interrelated that the interests of the absent class members will be protected. *See Falcon,* 457 U.S. at 157 n. 3, 102 S.Ct. 2364.

Plaintiffs allege that Mr. Violette's and Ms. Courts' claims are typical of those asserted by the classes and subclass in that they both have experienced the practices of which they complain on behalf of all others. Both Mr. Violette and Ms. Courts purchased used mo-

tor vehicles from P.A. Days through a financing contract. P.A. Days was the creditor and assigned the contract to Central Ohio Credit Corporation. Mr. Violette and Ms. Courts also executed retail installment contracts with an APR allegedly in excess of the legal limit of 25 percent and were allegedly automatically assessed a charge for Theft–Gard. Both Mr. Violette's and Ms. Courts' final allegation on behalf of the class concerns P.A. Days' failure to apply for transfer of title within 30 days of the purchase of their respective vehicles. Mr. Violette also asserts one individual claim against P.A. Days for breach of contract. This recitation of facts reveals that both Mr. Violette and Ms. Courts are members of all the classes they seek to represent, and therefore have claims typical of those of the class.

P.A. Days asserts that the typicality requirement is not met because Mr. Violette and Ms. Courts do not seek the same type of relief as do the classes and subclass in that Mr. Violette and Ms. Courts' primary concern is with equitable as opposed to legal remedy. *See* Violette Depo. at 26–27; Courts Depo. at 46. After reviewing the pertinent deposition testimony, the Court concludes that while Mr. Violette's and Ms. Courts' main motivation may not be for recovery of monetary damages, their claims for both equitable relief and for money damages are the same types of claims asserted on behalf of the various classes. Therefore, the typicality requirement is satisfied.

### 4. *Adequacy of Representation*

■ Finally, plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Criteria for assessing the adequacy of representation include whether the plaintiff has common interests with the class members and whether the representative will vigorously prosecute the interests of the class through qualified counsel. *See Senter,* 532 F.2d at 524–25. A factor in determining the vigor of representation concerns the representatives' resources to investigate class claims and to contact other class members. *See Bowen v. General Motors' Corp. A.C. Spark Plug Div.,* 542 F.Supp. 94, 100–02

(N.D.Ohio 1981); *Ingram v. Joe Conrad Chevrolet, Inc.,* 90 F.R.D. 129, 132 (E.D.Ky. 1981).

Mr. Violette and Ms. Courts claim that their interest in freedom from allegedly illegal consumer practices is common to that of all class members. Further, there is no indication that either has interests in conflict with the class members.

Moreover, Mr. Violette and Ms. Courts assert that they are represented by trial counsel with extensive experience in federal class action litigation to enforce consumer protection laws and that counsel has the ability and resources to vigorously pursue the claims. Therefore, the Court concludes that both will fairly and adequately protect the interests of the class.

### 5. *Certification Under Rule 23(b)(3)*

Since the requirements of Rule 23(a) are met, the Court must next consider whether the proposed classes can be certified under one of the subcategories of Rule 23(b). Plaintiffs seek certification of the proposed classes under Rule 23(b)(3). Rule 23(b)(3) permits an action to maintained· as a class action if the prerequisites of Rule 23(a) are met and:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of· concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Thus, Rule 23(b)(3) has two requirements: "(1) that common issues predominate over individual issues, and (2) class treatment is superior to other methods of adjudication."

*In re Telectronics Pacing Systems, Inc.,* 168 F.R.D. 203, 219 (S.D.Ohio 1996).

The first requirement of Rule 23(b)(3) "parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1084 (6th Cir.1996). With respect to the claims asserted under the Truth In Lending Act and the Ohio Consumer Sales Practices Act, Supreme Court dicta indicates that common issues may likely predominate in this type of consumer fraud action. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

In the case at bar, P.A. Days' liability will be analyzed in terms of its standard policies and procedures, which affected each class member. Consequently, as to liability, common issues predominate. In terms of damages, Plaintiffs seek statutory damages under the Truth In Lending Act, treble damages, actual damages, restitution ·of the amounts paid for Theft–Gard, disgorgement of any commission earned by P.A. Days on the sale of Theft–Gard, declaratory and injunctive relief, costs and reasonable attorneys' fees, and any other relief plaintiffs may be entitled to in law or equity. Despite the fact that individual damage awards will vary, the Court concludes that common issues predominate. Although different deals may be negotiated with every sale, P.A. Days' general policies, forms used, and course of conduct do not change from sale to sale. *See Mick v. Level Propane Gases, Inc.,* 203 F.R.D. 324, 331 (S.D.Ohio 2001) (concluding that "Plaintiffs' claims for fraud and deceit can be certified under Rule 23(b)(3) because the predominate question is whether Level engaged in misleading and deceptive sales practices"). In fact, "[a]ctions premised upon a ... course of conduct are appropriately certified under Rule 23(b)(3) despite the fact that individual damage claims differ." *Id.* (citing *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1196–97 (6th Cir.1988)). Therefore, the Court concludes that common issues predominate.

Plaintiffs must also demonstrate that a class action provides the superior method for adjudicating the issues at bar. This second requirement of Rule 23(b)(3) compels the court to balance the merits of a class action in terms of fairness and efficiency. *See In re Telectronics,* 168 F.R.D. at 221. Plaintiffs assert that class action is the superior method of adjudication because members of the class have no overriding interest in pursuing their claims individually. Many of the plaintiffs are of low income and lack the resources to secure representation and see the litigation through to completion. A class action potentially allows for recovery by individuals who otherwise would not have been compensated for P.A. Days' alleged wrongdoings. Therefore, class certification under Rule 23(b)(3) is appropriate.

### B. *Certification of Classes Against Ricart Properties*

As stated above, prior to an analysis of the Rule 23(a) prerequisites, the "court must first consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *Reeb,* 203 F.R.D. at 319 (citing *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Reid v. White Motor Corp.,* 886 F.2d 1462, 1471 (6th Cir.1989)). Key elements to defining a class include: "(1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way, and (2) facilitating a court's ability to ascertain its membership in some objective manner." *Reeb,* 203 F.R.D. at 319 (citing *Crosby v. Soc. Sec. Admin.,* 796 F.2d 576, 580 (1st Cir.1986)). Although such a finding is not specifically mentioned in Rule 23, "the definition of a class is an essential prerequisite to maintaining a class action." *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976).

In their amended complaint, Ms. Weaver and Mr. and Mrs. Adkins seek certification of two classes and one subclass in the action against Ricart Properties. Proposed Class One consists of "All persons to whom Ricart Properties sold Theft–Gard on or after January 19, 1996." Ms. Weaver and Mr. and Mrs. Adkins also seek certification of a subclass to Class One in order to account for the Ohio Consumer Sales Practices Act's two-year statute of limitations. Proposed Subclass One to Class One would consist of "All persons to whom Ricart Properties sold Theft–Gard on or after January 19, 2000." Finally, proposed Class Two consists of "All persons to whom Ricart Properties sold a vehicle primarily for personal, family or household purposes on credit through Ricart Properties' retail installment contract on or after January 19, 2000."

The Court concludes that the proposed classes and subclass are precisely defined in that they are limited to customers who, within a particular time frame, purchased vehicles on credit from and/or were sold Theft–Gard by Ricart Properties. Therefore, the Court may readily determine which of Ricart Properties' customers fall within the proposed classes and subclass.

#### 1. *Numerosity*

As stated above, Fed.R.Civ.P. 23(a)(1) requires plaintiffs to show first that "the class is so numerous that joinder of all members is impracticable...." There is no bright line numerical test by which the district court can determine when the numerosity requirement is satisfied, and the Sixth Circuit has noted that a class does not require any specific number of members: "Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter,* 532 F.2d at 523 n. 24; *see also Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 131 (1st Cir. 1985), *cert. denied* 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). The key to determining whether the numerosity requirement of Rule 23(a)(1) is satisfied rests on the impracticability of joining potential class members.

Satisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong hardship or inconvenience in litigation if joinder is required. *See Arkansas Educ. Ass'n v. Board of Educ. of Portland,* 446 F.2d 763 (8th Cir.1971); *Samuel v. University of Pittsburgh,* 56 F.R.D. 435 (W.D.Pa.1972).

"The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). "[T]he duty of establishing... particular circumstances rests with the party who asserts the existence of the class and that party must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir.1978). Nonetheless, it is permissible for a plaintiff to make reasonable inferences drawn from available facts and an "information monopoly [by the party opposing the class] will not stand in the way of persons seeking relief." *Jackson v. Foley*, 156 F.R.D. 538, 542 (E.D.N.Y.1994). As noted, impracticality of joinder depends not only on numbers; other factors which a court may consider include judicial economy, geographical dispersion of class members, and the financial resources of class members. *Id.* at 542 *citing Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993).

■■■■■ As to proposed Class One and Subclass One to Class One, customers to whom Ricart Properties sold Theft–Gard, Ricart Properties admits that in the year 2000, it sold Theft–Gard to more than 500 customers. *See* Response to Second Request for Admissions # 2. Therefore, assuming that Ricart Properties sold Theft–Gard to a like number of customers in earlier years, both proposed Class One and proposed Subclass One to Class One will likely have a minimum membership of 500 plaintiffs. Regarding proposed Class Two, customers to whom Ricart Properties sold vehicles on credit, Ricart Properties admits that in the year 2000, it sold vehicles to more than 500 customers on credit through the use of retail installment sales contracts. *See id.* Therefore, like proposed Class One, proposed Class Two will likely have a minimum membership of 500 plaintiffs.

Based on Ricart Properties' admissions, it is clear that the proposed classes and subclass are "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Plaintiffs would incur a substantial hardship if required to join all potential plaintiffs. Therefore, the numerosity requirement is satisfied.

### 2. Commonality

As stated above, Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The claims of the potential class members need not be factually identical. *See Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D.Ohio 1996). Rather, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Id.; see also Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 580 (S.D.Ohio 1993). Although Rule 23(a)(2) speaks of "questions" in the plural, there need only be one question common to the class. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc) (*citing American Medical*, 75 F.3d at 1080). The mere fact that questions peculiar to individual class members could remain does not necessarily defeat a finding of commonality. *See Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988); *Bacon v. Honda of America Mfg., Inc.*, 205 F.R.D. 466, 476 (S.D.Ohio 2001).

Conclusory allegations of commonality are insufficient to satisfy the burden of proof on certification. *See Falcon*, 457 U.S. at 157, 102 S.Ct. 2364; *American Medical*, 75 F.3d at 1081. The class representatives must enumerate questions of law or fact common to the class, "the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397.

■■■ As to proposed Class One and proposed Subclass One to Class One, the common question of fact concerns whether and how the cost of Theft–Gard was disclosed. The common question of law concerns whether Theft–Gard constitutes "insurance" under Ohio law.

■■■ As to proposed Class Two, the common questions of fact include the nature of the forms used by Ricart Properties in connection with retail installment transactions, how the APR was disclosed, and what types of fees and other charges were imposed.

The common questions of law include the legality of Ricart Properties' Retail Installment Contract and Security Agreement form, whether Ricart Properties' disclosure practices conform with the mandates of the federal Truth In Lending Act, and whether Ricart Properties' forms and practices violate the Ohio Retail Installment Sales Act and/or the Ohio Consumer Sales Practices Act.

These common questions of fact and law are at the heart of the litigation concerning Ricart Properties' policies and practices and would apply to all customers who fall within a particular class. *See Putnam,* 169 F.R.D. at 93. Therefore, the commonality requirement is satisfied.

### 3. *Typicality*

■ As stated above, Rule 23(a)(3) requires that the claims of the class representative be "typical of the claims...of the class." The typicality requirement focuses on the type of injury suffered by the class members and the interests of the various class members. *See Senter,* 532 F.2d at 525. The commonality and typicality requirements are closely related in that they each serve to assist in the determination whether the claim of the named plaintiff and those of the class are so interrelated that the interests of the absent class members will be protected. *See Falcon,* 457 U.S. at 157 n. 3, 102 S.Ct. 2364.

Plaintiffs allege that Ms. Weaver's and Mr. and Mrs. Adkins' claims are typical of those asserted by the classes and subclass in that they have experienced the practices of which they complain on behalf of all others. In August 2001, Ms. Weaver purchased a vehicle from Ricart Properties and allegedly was automatically charged for Theft–Gard. Further, her purchase was made on credit through a retail installment contract with Ricart Properties. Therefore, because Ms. Weaver is a member of both classes and the subclass, her claims are typical of the class claims.

On April 17, 2001, Mr. and Mrs. Adkins purchased a vehicle from Ricart Properties for personal, family and household purposes. As part of the sale, Ricart Properties allegedly imposed a charge for Theft–Gard. Therefore, Mr. and Mrs. Adkins are members of Class One and Subclass One to Class One. Mr. and Mrs. Adkins also assert that Ricart Properties failed to honor a limited warranty provided with the vehicle they purchased. Although the breach of warranty claim is not typical of all class members, because Mr. and Mrs. Adkins are members of Class One, the Court concludes that their overall claims are typical of those of the class.

### 4. *Adequacy of Representation*

■ As stated above, plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). Criteria for assessing the adequacy of representation include whether the plaintiff has common interests with the class members and whether the representative will vigorously prosecute the interests of the class through qualified counsel. *See Senter,* 532 F.2d at 524–25. A factor in determining the vigor of representation concerns the representatives' resources to investigate class claims and to contact other class members. *See Bowen v. General Motors Corp. A.C. Spark Plug Div.,* 542 F.Supp. 94, 100–02 (N.D.Ohio 1981); *Ingram v. Joe Conrad Chevrolet, Inc.,* 90 F.R.D. 129, 132 (E.D.Ky. 1981).

Ms. Weaver and Mr. and Mrs. Adkins claim that their interest in freedom from allegedly illegal consumer practices is common to that of all class members. Further, there is no indication that any has interests in conflict with the class members.

Defendants assert that neither Ms. Weaver nor Mr. and Mrs. Adkins is an adequate representative of the class for claims under the Federal Truth In Lending Act or the Ohio Retail Installment Sales Act. Defendants assert that Mr. Stover, who is no longer a party to the action, is the only plaintiff listed in the amended complaint as asserting these claims on behalf of himself and all other class members similarly situated. However, the portion of the amended complaint related to Ms. Weaver's interaction with Ricart Properties, while not specifically setting forth a theory of recovery under the federal Truth In Lending Act or the Ohio Retail Sales Installment Act, adequately pleads her potential entitlement to relief by

the facts asserted in conformity with Fed. R.Civ.P. 8's pleading requirement. Further, although Mr. and Mrs. Adkins do not assert claims under the federal Truth In Lending Act or the Ohio Retail Installment Sales Act, there is no evidence that their stake in recovering damages based on Ricart Properties' alleged automatic charge for Theft–Gard eclipses their ability or desire to pursue the class claims related to the federal Truth In Lending Act or the Ohio Retail Installment Sales Act on behalf of the class.

Finally, Ms. Weaver and Mr. and Mrs. Adkins assert that they are represented by trial counsel with extensive experience in federal class action litigation to enforce consumer protection laws and that counsel has the ability and resources to vigorously pursue the claims. Therefore, the Court concludes that all will fairly and adequately protect the interests of the class.

### 5. *Certification Under Rule 23(b)(3)*

Since the requirements of Rule 23(a) are met, the Court must next consider whether the proposed classes can be certified under one of the subcategories of Rule 23(b). Plaintiffs seek certification of the proposed classes under Rule 23(b)(3). Rule 23(b)(3) permits an action to be maintained as a class action if the prerequisites of Rule 23(a) are met and:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Thus, Rule 23(b)(3) has two requirements: "(1) that common issues predominate over individual issues, and (2) class treatment is superior to other methods of adjudication." *In re Telectronics Pacing Systems, Inc.*, 168 F.R.D. 203, 219 (S.D.Ohio 1996).

The first requirement of Rule 23(b)(3) "parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1084 (6th Cir.1996). Plaintiffs assert that common issues predominate in the action because the claims focus on Ricart Properties' general business practices and its consumer documents. With respect to the claims asserted under the Truth In Lending Act and the Ohio Consumer Sales Practices Act, Supreme Court dicta indicates that common issues may likely predominate in this type of consumer fraud action. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

In the case at bar, Ricart Properties' liability will be analyzed in terms of its standard policies and procedures, which affected each class member. Consequently, as to liability, common issues predominate. In terms of damages, Plaintiffs seek statutory damages under the Truth In Lending Act, treble damages, actual damages, restitution of the amounts paid for Theft–Gard, disgorgement of any commission earned by Ricart Properties on the sale of Theft–Gard, declaratory and injunctive relief, costs and reasonable attorneys' fees, and any other relief plaintiffs may be entitled to in law or equity. Despite the fact that individual damage awards will vary, the Court concludes that common issues predominate. Although different deals may be negotiated with every sale, Ricart Properties' general policies, forms used, and course of conduct do not change from sale to sale. *See Mick v. Level Propane Gases, Inc.,* 203 F.R.D. 324, 331 (S.D.Ohio 2001) (concluding that "Plaintiffs' claims for fraud and deceit can be certified under Rule 23(b)(3) because the predominate question is whether Level engaged in misleading and deceptive sales practices"). In fact, "[a]ctions premised upon a ... course of conduct are appropriately certified under Rule 23(b)(3) despite

the fact that individual damage claims differ." *Id.* (citing *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1196–97 (6th Cir. 1988)). Therefore, the Court concludes that common issues predominate.

 Plaintiffs must also demonstrate that a class action provides the superior method for adjudicating the issues at bar. This second requirement of Rule 23(b)(3) compels the court to balance the merits of a class action in terms of fairness and efficiency. *See In re Telectronics*, 168 F.R.D. at 221. Plaintiffs assert that class action is the superior method of adjudication because members of the class have no overriding interest in pursuing their claims individually. Many of the plaintiffs are of low income and lack the resources to secure representation and see the litigation through to completion. A class action potentially allows for recovery by individuals who otherwise would not have been compensated for Ricart Properties' alleged wrongdoings.

Defendants note that there are similar individual actions pending against Ricart Properties in other Ohio courts. Even so, it is desirable to concentrate litigation on these claims into one court and in one action for purposes of efficiency and judicial economy. Consequently, a class action is the superior method of adjudication of these claims. Therefore, class certification under Rule 23(b)(3) is appropriate.

### III.

On January 2, 2003, Plaintiffs filed a motion to compel discovery as to Defendants' bona fide error defense, or in the alternative, to strike Defendants' bona fide error defense. Plaintiffs have not submitted copies of the requests for documents or Defendants' responses. Therefore, because the Court is unable to evaluate the particular discovery requests and responses, Plaintiffs' motion to compel will be denied without prejudice.

As part of Defendants' response to Plaintiffs' motion, Defendants request that the Court strike the exhibits attached to Plaintiffs' motion. Defendants argue that the exhibits should be stricken because they are irrelevant and not authenticated. Because the Court will deny Plaintiffs' motion, Defendants' motion to strike will be denied as moot. However, the Court notes that if documents are submitted for the Court's consideration in connection with any future discovery motion, they must be properly authenticated.

Finally, on February 21, 2003, Defendants filed a motion for partial reconsideration of the Court's February 12, 2003 Order regarding the confidentiality of certain deposition testimony. Defendants assert that Kenneth Fink's deposition testimony regarding the discount on vehicles sold by P.A. Days should remain confidential. Because this testimony reveals information of a proprietary nature, the Court will grant Defendants' motion and order pages 41–43 of Mr. Fink's deposition to be sealed.

### IV.

Based on the foregoing, Mr. Violette's and Ms. Courts' motion to certify classes against P.A. Days (file doc. # 45) is GRANTED. Ms. Weaver's and Mr. and Mrs. Adkins' motion to certify classes against Ricart Properties (file doc. # 46) is GRANTED.

As against P.A. Days, Class One consists of "All persons to whom P.A. Days sold a vehicle primarily for personal, family or household purposes on credit through P.A. Days' retail installment contract on or after December 18, 1999." Class Two consists of "All persons to whom P.A. Days sold Theft–Gard on or after December 18, 1995." Subclass One to Class Two consists of "All persons to whom P.A. Days sold Theft–Gard on or after December 18, 1999." Class Three consists of "All persons to whom P.A. Days sold a vehicle primarily for personal, family or household purposes on or after December 18, 1999, but failed to apply for the transfer of title within 30 days of purchase."

As against Ricart Properties, Class One consists of "All persons to whom Ricart Properties sold Theft–Gard on or after January 19, 1996." Subclass One to Class One consists of "All persons to whom Ricart Properties sold Theft–Gard on or after January 19, 2000." Class Two consists of "All persons to whom Ricart Properties sold a vehicle primarily for personal, family or

household purposes on credit through Ricart Properties' retail installment contract on or after January 19, 2000."

Plaintiffs' motion to compel, or in the alternative, to strike Defendants' bona fide error defense (file doc. # 85) is DENIED WITHOUT PREJUDICE. Defendants' motion to strike the exhibits attached to Plaintiff's motion to compel (file doc. # 90) is DENIED AS MOOT. Defendants' motion for partial reconsideration (file doc. # 95) is GRANTED. Pages 41–43 of Mr. Fink's deposition testimony shall be sealed.