**Rachel REEB, et al., Plaintiffs,**

v.

**OHIO DEPARTMENT OF REHABILITATION and Correction Belmont Correctional Institution, et al., Defendants.**

No. C2: 00–CV–00774.

United States District Court,
S.D. Ohio,
Eastern Division.

Oct. 25, 2001.

Nicholas E. Kennedy, McGuire Law Office–2, Columbus, OH, for plaintiffs.

Richard Nicholas Coglianese, Ohio Attorney General–2, Columbus, OH, for defendants.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Plaintiffs' Motion for Class Certification filed on February 16, 2001. The Plaintiffs, Rachel Reeb, Verna Brown, Glenna Mackey, and Jill Beabout are all employees at the Belmont Correctional Institution in St. Clairsville, Ohio, who have brought a sex discrimination claim under Title VII, 42 U.S.C. § 2000e, against the Ohio Department of Rehabilitation and Corrections/Belmont Correctional Institute. They seek to certify a class defined as:

> All female employees of Defendant Belmont Correctional Institution, past or present, who now, will in the future, or at any time during the five years preceding the commencement of this action have worked for the Defendant Belmont Correction Institution.

For the following reasons, the Court **GRANTS** Plaintiffs' Motion for Class Certification under Rule 23(b)(2), and **DENIES**

Plaintiffs' Motion for Class Certification under Rule 23(b)(3). The (b)(2) class the Court certifies in this Order is circumscribed by a slightly more refined definition than that suggested by the Plaintiffs:

> All those female employees of Defendant Belmont Correctional Institute, past or present, who are members of the OCSEA and who now work, or at any time during the five years preceding the commencement of this action, worked for the Defendant Belmont Correctional Institute.

## II. FACTS

Belmont Correctional Institute ("BeCI")[1] is a prison operated by the Ohio Department of Rehabilitation and Corrections. BeCI employs 528 persons who are represented by three different unions, District 1199, OCSEA, and OEA. Other employees of BeCI are classified as civil servants.

Plaintiffs Reeb and Brown are female corrections officers at BeCI who were hired in 1995, and are members of OCSEA. Plaintiff Mackey is also a corrections officer and member of OCSEA, but for some period of time beginning on May 18, 2000, she was placed in a Temporary Work Level as a Secretary. Plaintiff Beabout is also a member of OCSEA who began working for BeCI in 1995. On January 16, 2000, Ms. Beabout was promoted to the position of Records Officer on a permanent basis after holding that position at a Temporary Work Level.

The Plaintiffs allege that, for over five years, they have been treated differently, held to different standards, and given different duties as compared to similarly situated male corrections officers. The Plaintiffs further allege that they have been denied promotions and, as a result, seventeen out of the eighteen Captain and Lieutenant positions at BeCI currently are held by men. They assert that female corrections officers are denied leave and overtime, are given undesirable positions, are pulled off of their posts, and are replaced with male officers. Furthermore, they claim that female corrections officers are written up for alleged infractions although male corrections officers are not written up for similar infractions. According to the Plaintiffs, women who have had intimate relations with the Warden or other supervisors have been treated better than other female employees.

The Plaintiffs attribute the lack of female promotions, at least in part, to the fact that male officers socialize with Warden Tate. They assert that male officers receive promotions as a result of their social ties to the Warden, while more qualified women who do not socialize with him are not promoted. Furthermore, they claim that BeCI uses the "temporary position" to place hand-selected men into positions over more qualified women. As the temporary positions become permanent, the posting requirements are circumvented, thus preventing the female corrections officers from applying for the promotions.

Based on the foregoing allegations, the Plaintiffs filed a Complaint with this Court on July 7, 2000. The Complaint sought relief under the Ohio Revised Code and Title VII from both BeCI and Warden Tate.

## III. ANALYSIS

### A. Preliminary Issues

#### 1. EEOC Filing

■ Before bringing a Title VII class action, a plaintiff must file a charge with the EEOC. Once that prerequisite is met for at least one named plaintiff, "the precondition to a Title VII action is met for all other named plaintiffs and class members." *Jones v. Firestone Tire and Rubber Co.*, 977 F.2d 527, 531–32 (11th Cir.1992) (citations omitted); *see EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 839–40 (6th Cir.1994) (recognizing that the single filing rule applies not only to classes, but also to non-class actions that involve multiple plaintiffs with similar claims arising during similar time frames). The named Plaintiffs have met their procedural

---

1. BeCI is the only Defendant that remains in this action because the Plaintiffs have voluntarily dismissed Warden Tate as a defendant. Furthermore, the only claim that remains against BeCI is the Title VII claim because the Plaintiffs have voluntarily dismissed all state law claims raised in the Complaint. *See* discussion *infra* Part III. A.2.

prerequisites by filing a charge with the EEOC and receiving a right to sue letter. Furthermore, the Plaintiffs gave notice of the class action in their charge when they stated that the Defendant "failed to provide equal treatment for women," "promoted less qualified males," "violated pick-a-post which forces women to work the less desirable positions than those the males are placed on," and that "female officers ... are routinely held to a different standard than male officers."

## 2. Immunity

The Defendant contends that BeCI has Eleventh Amendment immunity from the Plaintiffs' state law claims. The Defendant also asserts that this Court lacks jurisdiction as to the state law claims against Warden Tate prior to a finding by the Ohio Court of Claims that he has been stripped of his immunity. *See* OHIO REV.CODE § 9.86 (granting civil immunity to state officers and employees for damage or injury inflicted in the performance of official duties). The Defendant claims, furthermore, that this Court cannot hear a Title VII claim against Warden Tate.

■ With few exceptions, the Eleventh Amendment to the United States Constitution prohibits individuals from suing States in federal court. *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Mixon v. Ohio,* 193 F.3d 389, 396–97 (6th Cir.1999). Likewise, suits for monetary damages brought against state officials in their official capacities are barred by the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (holding that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment").

Presently, the Defendant's immunity argument is moot, as is its Partial Motion for Judgment on the Pleadings filed on March 30, 2001 since, on April 30, 2001, the Plaintiffs voluntarily dismissed their state law claims and their Title VII claim against Defendant Tate. Only the Plaintiffs' Title VII claim against BeCI remains. The Defendant has not attempted to claim immunity as to this claim.

## B. Definition of the Class

■ Before delving into Rule 23 analysis, the Court must first consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class. *See East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (discussing membership in a proposed class); *Reid v. White Motor Corp.,* 886 F.2d 1462, 1471 (6th Cir.1989) ("A class representative must be part of the class and 'possess the same interest and suffer the same injury as class members.'") (citations omitted). While class definitions are obviously tailored to the specifics of every case, important elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way, and (2) facilitating a court's ability to ascertain its membership in some objective manner. *Crosby v. Soc. Sec. Admin.,* 796 F.2d 576, 580 (1st Cir.1986) (holding that a class could not be certified because the definition "ma[de] class members impossible to identify prior to individualized fact-finding and litigation" and thereby failed "to satisfy one of the basic requirements for a class action under Rule 23"); *see Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1012 (W.D.Mich.1987) (finding that the plaintiffs met the requirement for defining a class because the definition specified a group of laborers "during a specific time frame and at a specific location who were harmed in a specific way ...") (citations omitted).

■ Where named plaintiffs fail to define the class adequately, the court need not proceed to a full analysis under Rule 23. *See Metcalf v. Edelman,* 64 F.R.D. 407, 409–10 (N.D.Ill.1974). If a court must come to numerous conclusions regarding class membership or must adjudicate the underlying issues on behalf of each class member, then a proper class cannot be defined concisely. *See id.* Nonetheless, if plaintiffs fail to adequately define a class, the class certification motion does not *ipso facto* fail because the court has the authority to properly define the class for

the parties. *See Id.* at 409 ("It is within the prerogative of the court to construct a definition of the class.").

The Plaintiffs seek to define the class as "all female employees of Defendant Belmont Correctional Institution, past or present, who now, will in the future, or at any time during the five years preceding the commencement of this action have worked for the Defendant Belmont Correction Institution." There are two defects with the requested class definition. First, inclusion of future hires is problematic to the extent that the Plaintiffs have not alleged that the Defendant's hiring practices are discriminatory, nor have they alleged that they were discriminated against during the hiring process.[2] Second, the named Plaintiffs are all members of OCSEA. Therefore, the Plaintiffs' definition of the class to include "all female employees" is improper because, as discussed below, the OCSEA members cannot adequately represent all other female employees of BeCI because they are not typical of the class.

The problems with the Plaintiffs' request are easily remedied, however, by eliminating future hires and non-OCSEA employees from the class definition. The resulting class, as circumscribed by this Court, can be easily ascertained as the definition specifies a particular group (OCSEA-represented female employees) that was harmed during a particular time frame (over the last five years), in a particular location (BeCI), in a particular way (through an alleged pattern of sex discrimination).

### C. Rule 23(a) Analysis

Federal Rule of Civil Procedure 23, Class Actions, provides:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED.R.CIV.P. 23(a).

Before certifying a class, a court must engage in "rigorous analysis" of the plaintiff's ability to meet the requirements of Rule 23. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1078–79 (6th Cir.1996). The party that moves for class certification has the burden of proof under Rule 23. *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 520 (6th Cir.1976) (finding that the plaintiff must show that the action satisfies the Rule 23 requirements).

Although the plaintiff bears the burden of proof, the court must not inquire into the merits of the underlying claims of the class representative. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). A court should accept as true the plaintiff's allegations in the complaint. *Shelter Realty Corp. v. Allied Maint. Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978); *Mayo v. Sears, Roebuck & Co.,* 148 F.R.D. 576, 579 (S.D.Ohio 1993). Resolution of the class certification issue may, however, require the court "to probe behind the pleadings." *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364. Although, "[i]n ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings," *Senter,* 532 F.2d at 523, plaintiffs may not rely on pure speculation to satisfy Rule 23's requirements. *Cwiak v. Flint Ink Corp.,* 186 F.R.D. 494, 497 (N.D.Ill.1999). Even after certification, a court may decertify a class if there is a subsequent showing that the grounds for granting certification no longer exist or never existed. *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364.

#### 1. Numerosity

Rule 23(a)(1) requires the purported class to be "so numerous that joinder of all members is impracticable...." Numerosity, although so named, imposes no specific numerical requirements upon the

---

**2.** At oral argument, the Plaintiffs acknowledged that they failed to refer explicitly to discriminatory hiring practices as one of the bases for their claims in the Complaint.

class. A threshold number of class members is not required, though numbers alone may be sufficient to satisfy numerosity if the numbers are great enough. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996) ("When class size reaches substantial proportions ... the impracticability requirement is usually satisfied by the numbers alone."). The determination of whether this element has been satisfied " 'requires examination of the specific facts of each case and imposes no absolute limitations.' " *Id.* (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). In determining whether joinder is impracticable, the court may consider not only the number of plaintiffs, but also "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief...." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993).

██ The Defendant employs fifty-nine women as corrections officers. Although it might appear that fifty-nine is a small enough number to make joinder practicable, courts have certified smaller classes when the circumstances have deemed it appropriate. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D.Ill.1996) (finding that the plaintiff's proposed class of eighteen satisfied the numerosity requirement); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D.Pa.1990) (holding that courts could certify a class made up of as few as fourteen people, particularly where the relief sought is injunctive or declaratory); *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 603 (D.Colo.1990) ("A relatively small class may be certified if joinder is impractical."). Furthermore, judicial economy is clearly served if these women can bring their claims together in one action rather than individually, especially in light of the fact that an injunction prohibiting future discrimination, the primary relief sought, would apply to all of the class members equally. Additionally, it is unlikely that the

majority of the class members have the financial resources necessary to bring individual suits. These factors, taken together, outweigh the fact that the plaintiffs are all probably located in a relatively small geographic area. In the particular circumstances of this case, the Plaintiffs have shown that joinder is impractical and, therefore, have met the numerosity requirement.[3]

### 2. Common Questions of Law or Fact: Commonality

██ To meet the commonality requirement, "there need be only a single issue common to all members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080 (quotation omitted). The Sixth Circuit has stated that "[t]he commonality requirement is interdependent with the impracticability of joinder requirement, and the 'tests together form the underlying conceptual basis supporting class actions.' " *Id.* (citation omitted). This element was later simplified by the Sixth Circuit when it found: "Although Rule 23(a)(2) speaks of 'questions' in the plural, we have said that there need only be one question common to the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) (qualifying this statement by adding: "What we are looking for is a common issue the resolution of which will advance the litigation."). As this Court has held previously, commonality exists "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 580 (S.D.Ohio 1993) (citation omitted).

██ The Plaintiffs have met the commonality requirement by alleging that the Defendant has engaged in a general pattern or practice of discrimination against women that violates Title VII by its various employment actions and decisions that have disproportionately harmed female employees. Whether the Defendant's alleged practices violate federal law is clearly a question common to

---

**3.** The Defendant's attempt to defeat numerosity by claiming that the proposed class must be broken down into subsets of the various types of alleged disparate treatment must fail. All of the

alleged discriminatory practices are based on the same theory of disparate treatment of female employees at BeCI, whether it be in promotions, overtime, posts, or discipline.

the class, and is essentially the only legal question involved in this case.

### 3. Typicality

■ A named plaintiff's claim is considered to be typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d at 1082 (citation omitted). The requirement has been described as "the representative's interests [being] aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.* (citation omitted). Briefly, "as goes the claim of the named plaintiff, so go the claims of the class." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir.2000) (quotation omitted).

■ The Plaintiffs have been subject to the same unlawful treatment suffered by the putative class, as that class has been defined by this Court, resulting in identical legal claims. By limiting the class to OCSEA members, any problems that may have arisen because of differences between the named plaintiffs and other class members in regard to promotion practices, leave and overtime policies, work levels, or disciplinary measures have been eliminated. The proofs that are required for the individual claims of the named Plaintiffs to prevail are those necessary for the putative class to prevail. Therefore, the named Plaintiffs satisfy the typicality requirement.

### 4. Fair and Adequate Representation of the Class

■ The Sixth Circuit has outlined two criteria to consider in determining whether representation of the class would be adequate: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interest of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir.1976). An individual may not be an adequate representative if she is subject to unique defenses that place her in a position that is antagonistic to the interests of the class. *Levels v. Akzo Nobel Salt, Inc.*, 178 F.R.D. 171, 179 (N.D.Ohio 1998).

■ In this case, the unnamed class members' interests are virtually identical to those of the named class representatives.[4] Both groups are seeking a cessation of the Defendant's allegedly unlawful practices. Plaintiffs' counsel is experienced in the area of civil rights and employment related actions, including class action litigation. Furthermore, although the Defendant may assert different defenses against the various Plaintiffs and class members, the defenses to the claims by the named Plaintiffs are not so unique as to make the named Plaintiffs antagonistic to the rest of the class. The Court finds that the named Plaintiffs will fairly and adequately represent the class.

### D. Rule 23(b) Analysis

Because the Court has found the Plaintiffs' putative class to be adequately defined and to have fulfilled the prerequisites of Rule 23(a), it must now determine whether the proposed class satisfies the additional requirements of Rule 23(b)(2) and/or 23(b)(3). *Senter*, 532 F.2d at 522 (ruling that the plaintiff "must satisfy all four of the prerequisites contained in Rule 23(a) and then demonstrate that the class he seeks to represent falls

---

4. The Court notes that some members of the putative class, unlike the named Plaintiffs, applied for promotions for which they were rejected allegedly because of their sex. This does not defeat the named Plaintiffs' ability to represent the class, however, because the Plaintiffs' claims regarding discriminatory promotions allege not only that the Defendant's discriminatory practices resulted in women being rejected for promotions, but also that they prevented female employees like themselves from finding out about and applying for promotions in the first place.

*See Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir.1989) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367–68, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), for the proposition that Title VII plaintiffs need not have formally applied for positions if they can show that, but for the defendant's discriminatory practices, they would have applied for them). Furthermore, the Court bears in mind that the Plaintiffs are challenging the Defendant's entire pattern of discrimination in its employment of women.

within one of the subcategories of Rule 23(b)"). Rule 23(b) provides that class certification is proper when the plaintiffs have met the requirements of Rule 23(a), and:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

FED.R.CIV.P. 23(b)(2), (b)(3).

### 1. Rule 23(b)(2)

■ The Plaintiffs seek declaratory and injunctive relief, as well as five million dollars in damages. In response, the Defendant contends that this Court may only certify a class under 23(b)(2) if declaratory or injunctive relief is the primary relief sought. Citing the Fifth Circuit case of *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir.1998), the Defendant argues that in a Title VII case, "monetary relief predominates in a(b)(2) class action unless it is incidental to requested injunctive or declaratory relief." *Id.* at 415 (specifying that "incidental" damages are those damages that flow directly from the award of injunctive or declaratory relief). The five million dollars in damages, according to the Defendant, is not incidental to the injunctive and declaratory relief requested.

Although other circuits have followed the Fifth Circuit's ruling in *Allison*, the Sixth Circuit has not yet ruled on the matter. Chief Judge Rice, however, has rejected the analysis of *Allison*. *See Hoffman v. Honda of America Mfg., Inc.*, 191 F.R.D. 530 (S.D.Ohio 1999). In *Hoffman*, Judge Rice wrote: "[A]n action in which both injunctive relief and money damages are sought may be certified as a class under Rule 23(b)(2), as long as money damages do not constitute the predominate type of relief requested." *Id.* at 536. Judge Rice went on to declare that

district courts could determine which type of relief predominates after considering the evidence and arguments of counsel, and then weighing the relative importance of the remedies sought in light of the specific facts and circumstances of the case. *Id.*

The Court recognizes the persuasiveness of *Hoffman* in light of the stated purpose of the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("1991 Act"). The 1991 Act, which made compensatory and punitive damages available to plaintiffs claiming intentional discrimination under Title VII, was intended to broaden the relief available to such plaintiffs, not curtail their ability to bring such claims through the vehicle of class actions. *See* Lesley Frieder Wolf, *Evading Friendly Fire: Achieving Class Certification After the Civil Rights Act of 1991*, 100 COLUM. L. REV. 1847, 1848–49 (2000). In broadening Title VII plaintiffs' options for relief, Congress did not intend to force plaintiffs to choose between broad relief and the advantageous vehicle by which that relief could be sought. More likely, in drafting the 1991 Act, Congress did not anticipate the conflict that was created with Rule 23(b)(2). *Id.* at 1849–50. This Court cannot and will not now read the Rules of Civil Procedure as eviscerating the substantive rights granted by Congress. Furthermore, *Hoffman* follows logically from the plain language of Rule 23(b)(2), which requires only that final injunctive and corresponding declaratory relief be appropriate under the circumstances of the case. *See* FED.R.CIV.P. 23(b)(2). Neither the Rule nor the accompanying Advisory Committee Note requires that damages be incidental to the equitable relief sought in order for a class to be certified under 23(b)(2). *See* FED.R.CIV.P. 23(b)(2) advisory committee's note (stating that 23(b)(2) should not be utilized for cases in which the final relief relates "exclusively or predominantly" to money damages).

■ The Plaintiffs have emphasized that the primary goal of their claim is to ensure that the Defendant treats all of its employees the same, regardless of their sex. They have repeatedly stated that they will feel their rights have been vindicated not by an award of monetary damages alone, but by effecting a change in the way their employer treats

females. Although the Plaintiffs have requested damages along with injunctive and declaratory relief, the equitable relief sought clearly predominates in this action. Therefore, under the particular circumstances of this case, the Court finds that certification under Rule 23(b)(2) is proper.

### 2. Rule 23(b)(3)

The Sixth Circuit has noted that "[s]ubdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Am. Med. Sys.*, 75 F.3d at 1084 (citation omitted).

The Plaintiffs are challenging the Defendant's failure to promote, discipline, post, schedule, and fairly apply rules and regulations to the female employees as compared to the male employees at BeCI. Although the Plaintiffs have presented a common question of law (i.e. whether the Defendant disparately treated female corrections officers in violation of Title VII), this common question does not predominate in the action. On the contrary, individualized issues regarding both claims and defenses will predominate. Specifically, if the Plaintiffs present a prima facie case of discrimination, then the Defendant will be likely to come forward with individualized legitimate non-discriminatory reasons for the actions as to each Plaintiff. Furthermore, if the Defendant is found liable, individualized proof will be necessary for each Plaintiff to prove compensatory damages. Not only do these individual issues predominate, but they also mandate a finding that class litigation is not the superior method to litigate these claims. Therefore, the Plaintiffs' motion for certification under Rule 23(b)(3) must be denied. ·

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Class Certification under Rule 23(b)(2), and **DENIES** Plaintiffs' Motion for Class Certification with respect to the class sought under Rule 23(b)(3). The (b)(2) class certified is defined as follows:

All those female employees of Defendant Belmont Correctional Institute, past or present, who are members of the OCSEA and who now work, or at any time during the five years preceding the commencement of this action, worked for the Defendant BeCI.

**IT IS SO ORDERED.**