Lori LILES, et al., Plaintiffs,

Elena Del Campo, Lydia Rosario, and Audra Phillips, Intervenor–Plaintiffs,

v.

AMERICAN CORRECTIVE COUNSEL-ING SERVICES, INC. and Donald R. Mealing, Defendants.

No. 4:00–CV–10497.

United States District Court, S.D. Iowa, Central Division.

Sept. 29, 2005.

Richard J. Bell, Bell Law Office, Mt. Pleasant, IA, Steven Eugene Ort, Bell & Ort, New London, IA, Wood R. Foster, Jr., Siegel Brill Grupner Duffy & Foster PA, Minneapolis, MN, for Plaintiffs.

Lee P. Hook, Des Moines, IA, O. Randolph Bragg, III, Horwitz Horwitz & Associates, Chicago, IL, Paul Arons, Arons Law Office, Redding, CA, for Intervenor Plaintiffs.

David L. Hartsell, McGuire & Woods LLP, Chicago, IL, Steven L. Serck, Ahlers Cooney Dorweiler Haynie Smith & Allbee, Des Moines, IA, for Defendants.

## ORDER

LONGSTAFF, Chief Judge.

THE COURT HAS BEFORE IT the following motions: 1) plaintiffs' motion to certify class, filed October 7, 2004; 2) plaintiffs' motion to dismiss the intervenors, filed October 7, 2004; 3) plaintiffs' motion to amend the amended complaint, filed October 12, 2004; and 4) plaintiffs' motion to amend/correct the class description, filed August 18, 2005. Defendants have resisted all motions, and a telephonic hearing was held before the Court on September 23, 2005.[1] The motions are considered fully submitted.

## I. MOTIONS TO CERTIFY CLASS AND TO AMEND/CORRECT CLASS DESCRIPTION

### A. Background and Proposed Class Definitions

The Court first will address plaintiffs' motion to certify class, and motion to amend/correct the class description.[2] Because plaintiffs have voluntarily moved to amend their proposed class definition *prior* to the actual certification of any class, the Court need only evaluate the class definitions as proposed in plaintiffs' August 18, 2005 filing. The first class, called the "Federal Class," consists of persons in all but five states in which ACCS had contacts through June 2001 who received an ACCS "Official Notice" *and* who made payments to ACCS after receiving the notice. The class period for the Federal Class is from September 1, 1999 to June 30, 2001.

The second class, the "Iowa Class," consists of all Iowa residents who also are members of the "Federal Class." The class period for this smaller group is from September 1, 1995 to the present. The revised, proposed definitions are as follows:

31. **FDCPA Class**[3]: Plaintiff Christina Burgess, as the proposed Class Representative for the "FDCPA" class, asserts the claim described in Count I of this Third Amended Complaint on behalf of a class described as follows:

All persons who, on or after September 1, 1999, and prior to July 1, 2001, first received an "Official Notice" in a form substantially similar to that received by the named plaintiffs or were otherwise contacted in writing or by telephone by any person affiliated with a bad check misdemeanor restitution/diversion program identified below and operated in affiliation or under contract with defendant ACCS, but *excluding* persons fitting the following descriptions:

a. Excluded from the FDCPA class are all persons whose address was unknown to ACCS (as reflected in ACCS electronic records) at the time ACCS discontinued communication with said persons;

b. Excluded from this class are all persons who were referred in the course of normal procedures by ACCS to a prosecuting authority for actual prose-

---

1. In pleadings filed October 25, 2004, counsel for the intervenors indicated they do not resist plaintiffs' motions, but desire to continue to receive notice of electronic filings.

2. The facts of this matter have been outlined in prior Orders of this Court, and will be repeated only as necessary to the disposition of the present motions.

3. References to the FDCPA are to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

cution in connection with the bad check described in ACCS' initial communication with such person;

c. Excluded from this class are all persons who made no payments to ACCS;

d. Excluded from this class are all persons contacted by ACCS on behalf of any prosecuting authority in the states of California, Florida, Indiana, Nevada, and Minnesota.

The bad check diversion/restitution programs to which this Class Action Complaint applies are as follows:

**Colorado:**
— First Judicial District Attorney, Golden
— Second Judicial District Attorney, Denver
— Eighth Judicial District Attorney, Fort Collins
— Tenth Judicial District Attorney, Pueblo
— Seventeenth Judicial District Attorney, Brighton
— Eighteenth Judicial District Attorney, Englewood
— Twentieth Judicial District Attorney, Boulder
— Twenty First Judicial District Attorney, Grand Junction

**Georgia:**
— Stone Mountain Judicial Circuit District Attorney, Decatur

**Hawaii:**
— Honolulu Prosecuting Attorney, Honolulu

**Illinois:**
— Champagne County State's Attorney, Urbana
— Dekalb County State's Attorney, Sycamore
— Douglas County State's Attorney, Tuscola
— DuPage County State's Attorney, Wheaton
— Effingham County State's Attorney, Effingham
— Fayette County State's Attorney, Vandalia
— Franklin County State's Attorney, Benton
— Jasper County State's Attorney, Newton
— Jefferson County State's Attorney, Mt. Vernon
— Kane County State's Attorney, St. Charles
— Knox County State's Attorney, Gaylesburg
— Madison County State's Attorney, Edwardsville
— McHenry County State's Attorney, Woodstock
— Richland County State's Attorney, Onley
— Sangamon County State's Attorney, Springfield
— St. Claire County State's Attorney, Belleville
— Vermillion County State's Attorney, Danville

**Iowa:**
— Dubuque County Attorney, Dubuque
— Jefferson County Attorney, Fairfield
— Polk County Attorney, Des Moines

**Maryland:**
— Anne Arundel County State's Attorney, Annapolis
— Baltimore County State's Attorney, Towson
— City of Baltimore State's Attorney, Baltimore
— Frederick County State's Attorney, Frederick
— Harford County State's Attorney, Bel Air
— Howard County State's Attorney, Ellicott City

— Prince George's County State's Attorney, Upper Marlboro

**Massachusetts:**
— Bristol County District Attorney, New Bedford
— Hampden County District Attorney, Springfield
— Plymouth County District Attorney, Brockton

**Michigan:**
— Bay County Prosecuting Attorney, Bay City
— Branch County Prosecuting Attorney, Coldwater
— Genesee County Prosecuting Attorney, Flint
— Huron County Prosecuting Attorney, Bad Axe
— Livingston County Prosecuting Attorney, Howell
— Macomb County Prosecuting Attorney, Mount Clemens
— Oakland County Prosecuting Attorney, Pontiac
— Saginaw County Prosecuting Attorney, Saginaw
— St. Clair County Prosecuting Attorney, Port Huron
— Wayne County Prosecuting Attorney, Detroit
— Washtenau County Prosecuting Attorney, Ann Arbor

**New Mexico:**
— First Judicial District, District Attorney, Santa Fe
— Ninth Judicial District, District Attorney, Clovis
— Tenth Judicial District, District Attorney, Tucumcari
— Twelfth Judicial District, District Attorney, Alamorgordo

**Pennsylvania:**
— Lawrence County District Attorney, New Castle
— Lebanon County District Attorney, Lebanon
— Montgomery County District Attorney, Norristown
— Somerset County District Attorney, Somerset

32. **Iowa Class:** All plaintiffs assert the claim stated in Count II on behalf of an "Iowa Class" described as follows:

All persons who, on or after September 1, 1995, and prior to July 1, 2001, first received an "Official Notice" in a form substantially similar to that received by the named plaintiffs or were otherwise contacted in writing or by telephone by any person affiliated with a bad check misdemeanor restitution/diversion program authorized by any prosecuting authority in the State of Iowa in affiliation or under contract with defendant ACCS, but *excluding* persons fitting the following descriptions:

a. Excluded from the FDCPA class are all persons whose address was unknown to ACCS (as reflected in ACCS electronic records) at the time ACCS discontinued communication with said persons;

b. Excluded from this class are all persons who were referred in the course of normal procedures by ACCS to a prosecuting authority for actual prosecution in connection with the bad check described in ACCS' initial communication with such person;

c. Excluded from this class are all persons who made no payments to ACCS, unless ACCS electronic or other information known to plaintiffs reflect that the contacted person retained an attorney in connection with the contact from ACCS.

B. Applicable Law and Discussion

Rule 23(a) of the Federal Rules of Civil Procedure states as follows:

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so

numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The burden is on the plaintiff to satisfy each prerequisite of Rule 23(a). *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Assuming all of the prerequisites set forth in Rule 23(a) have been met, a plaintiff seeking class certification must also satisfy one or more of the conditions set forth under Rule 23(b). Fed.R.Civ.P. 23(b); *see also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citing Rule 23(b)). In the present case, plaintiffs contend their proposed definitions satisfy Rule 23(b)(3), which requires a showing that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3).

In evaluating a motion to certify a class this Court must conduct a "rigorous analysis" to determine whether all the prerequisites of Rule 23(a) are satisfied. *General Tel. Co.,* 457 U.S. at 161, 102 S.Ct. 2364. Nevertheless, the district court retains "broad discretion" to determine whether class certification is appropriate in each particular action. *In re Milk Prods. Antitrust Litig.,* 195 F.3d 430, 436 (8th Cir.1999).

### C. Whether Defendants are Estopped from Challenging Class

■ The Court first will address plaintiffs' argument that defendants are judicially estopped from challenging certification. As noted by defendants, the Preliminary and Conditional Settlement Agreement, executed in April 2002, provided that upon an "event triggering nullification:"

[A]ll negotiations, proceedings ... made in connection herewith shall be without preju-

dice to any person or entities, and shall not be deemed or construed to be an admission or concession by any person in any manner or for any purpose, and shall not be used for any purpose whatsoever in any subsequent proceedings in any court. In such an event that this Settlement Agreement is deemed null and void, the parties shall be deemed to have reverted to their respective legal statuses as of the date and time immediately prior to the execution of this Settlement Agreement, and the parties shall proceed in all respects as if this Settlement Agreement and any orders issued in connection therewith had not been executed.

Preliminary and Conditional Settlement Agreement, ("the Settlement Agreement"), filed Apr. 8, 2002 at 11, ¶ 11(b). The parties do not dispute that this Court's September 27, 2004 Order setting aside the Settlement Agreement amounted to an "event triggering nullification;" indeed, in their October 7, 2004 Memorandum in Support of their Motion to Certify, plaintiffs quoted paragraph 11(b) of the Preliminary and Conditional Settlement Agreement, and indicated their plan to "proceed on the basis of the pleadings and discovery status as of April 8, 2002." Plaintiffs' Memorandum in Support of their Motion to Certify, at 3.

Even in the absence of paragraph 11(b), however, the Eighth Circuit has held that the doctrine of judicial estoppel will not apply unless a party attempts to take "inherently inconsistent" positions. *Pickens v. Soo Line R.R. Co.,* 264 F.3d 773, 779 (8th Cir.2001). In the present case, defendants did not appear to make *any* representations regarding plaintiffs' proposed class definition and their ability to satisfy Rule 23(a) prior to entering into the Preliminary and Conditional Settlement Agreement. The fact defendants now find fault with plaintiffs' *significantly revised* class definitions is not "inherently inconsistent" with their pre-settlement position. The Court therefore concludes defendants are not judicially estopped from challenging class certification at this juncture.

The Court is likewise unconcerned that *its* current scrutiny of plaintiffs' proposed class definitions is somehow inconsistent with its

October 1, 2002 Order preliminarily approving the Settlement Agreement and certifying the class then before it. Since this Court set aside the Settlement Agreement, plaintiffs not only have reduced dramatically the size of their proposed federal class by limiting membership to those who actually made payments to ACCS, but have created a new class comprised of Iowa residents. Plaintiffs' amendments to their earlier class definition necessarily have raised legal issues not present when the Court conditionally certified the original class.

### D. Requirements of Rule 23(a)

#### 1. "Implicit Requirements"

In addition to the four factors set forth in Rule 23(a), several courts have recognized the following two "implicit" prerequisites: 1) that the class definition is drafted to ensure that membership is "capable of ascertainment under some objective standard;"[4] and 2) that the class representatives are in fact members of the proposed class. *See, e.g., Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976); *Edwards v. McCormick,* 196 F.R.D. 487, 491 (S.D.Ohio 2000) (citing *East Texas Motor Freight Sys. Inc., v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)); *Carter v. Johnson,* 174 F.R.D. 452, 459 (D.Neb.1996); *Health Plan of Upper Ohio Valley, Inc. v. DeGarmo,* 1996 WL 780508 at *2 (N.D.W.Va.1996); *Irvin E. Schermer Trust v. Sun Equities Corp.,* 116 F.R.D. 332, 335 (D.Minn.1987). Although the Eighth Circuit has not yet included these "implicit" factors in a published opinion addressing Rule 23(a), the Court is satisfied both factors are logical and supported by the law. *See East Texas Motor Freight Sys., Inc.,* 431 U.S. at 403, 97 S.Ct. 1891 ("As this Court has repeatedly held, a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."); *see also Roman,* 550 F.2d at 1348 ("[T]he definition of the

class is an essential prerequisite to maintaining a class action").

#### a. Whether Class is Precisely Defined

As summarized by an Ohio district court in *Reeb v. Ohio Department of Rehabilitation,* 203 F.R.D. 315, 319 (S.D.Ohio 2001):

> While class definitions are obviously tailored to the specifics of every case, important elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way, and (2) facilitating a court's ability to ascertain its membership in some objective manner.

(Citing *Crosby v. Soc. Sec. Admin.,* 796 F.2d 576, 580 (1st Cir.1986)) (certification denied due to fact "class members impossible to identify prior to individualized fact-finding and litigation").

█ In their October 7, 2004 motion to certify, both of plaintiffs' proposed class definitions excluded (1) "All persons who were referred in the course of normal procedures by ACCS to a prosecuting authority for actual prosecution (*and were actually charged)*" and (2) "all persons who made no payments to ACCS, *unless ACCS' electronic or other records reflect that the contacted person retained an attorney in connection with the contact from ACCS.*" Third Amended Class Action Complaint at 9–10, 12 (emphasis added). Based on challenges raised by defendants in their initial resistance memorandum,[5] plaintiffs wisely removed the italicized language from their most recent federal class definition, rendering the actual class more easily ascertainable.

Plaintiffs did not remove the language *"unless ACCS' electronic or other records reflect that the contacted person retained an attorney in connection with the contact from ACCS"* from the definition for their Iowa class, however, due to the fact that removing the language would exclude three of their four named plaintiffs. Plaintiffs assert, with-

---

4. *Carter v. Johnson,* 174 F.R.D. 452, 459 (D.Neb. 1996) (citing *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976)).

5. Specifically, defendants claim ACCS has no record of which individuals referred for prosecution "were actually charged;" and/or "retained an attorney in connection with the contact from ACCS."

out proof, that "caller notes kept in conjunction with each class member would reveal the involvement of an attorney," and that "published notice of certification also will urge such persons to step forward." Plaintiffs' Reply Memorandum in Support of Motion for Class Certification, at 2 n. 4.

This Court is not convinced. If such "caller notes" do in fact provide such information, it was plaintiffs' burden to produce these notes to support certification of the Iowa class. *See, e.g., General Tel. Co. of Southwest*, 457 U.S. at 161, 102 S.Ct. 2364 (burden on the plaintiff to satisfy each prerequisite of Rule 23(a)). Without such evidence, plaintiffs, and the Court, can only speculate as to whether anyone other than the four named plaintiffs in fact falls within the scope of the definition. Published notice *after* certification does little to "facilitat[ ][the] court's ability to ascertain its membership in some objective manner." *Reeb*, 203 F.R.D. at 319. The Court therefore finds the "Iowa class" does not meet the first implicit requirement of Rule 23.[6]

### b. Whether Named Plaintiffs are Members of Proposed Class

A second implicit requirement of Rule 23(a) certification is that the named plaintiffs fall within the scope of the class definition. *East Texas Motor Freight Sys., Inc.*, 431 U.S. at 403, 97 S.Ct. 1891 ("As this Court has repeatedly held, a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."); *Great Rivers Co-op. of Southeastern Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir.1997) ("Inherent in Rule 23 is the requirement that the class representatives be members of the class."). Again, based on challenges raised in defendants' resistance memorandum, plaintiffs have amended their proposed federal definition to list Christina Burgess as the sole class representative. It is undisputed that plaintiffs Lori Liles, Robert Mettler and Rebecca Reynolds never paid money to ACCS' check diversion program.

Defendants argue that Ms. Burgess also should be excluded as class representative based on deposition testimony suggesting she is not seeking money damages from defendants. Specifically, Ms. Burgess testified as follows:

Q. What damages are you claiming in this case?

A. Meaning?

Q. What money are you claiming in this case for you?

A. What money am I expecting to get back out of this?

Q. Yes.

A. Nothing. Nothing. My whole point in being part of this case is to have them stop doing what they're doing. I don't feel that it's right for them to be able to charge people $125, $150 to collect the debt.

Defendants' August 12, 2005 App. ("Defs.App.") at 42A–42B.

Defendants claim this testimony amounted to an outright disclaimer of damages. Plaintiffs dispute this characterization, claiming Ms. Burgess only meant to explain "that money is less important to her than whether she succeeds in stopping ACCS' improper collection scheme." Plaintiffs' Reply Memorandum in Support of Motion for Class Certification at 4.

The Court finds a fact issue to exist on this issue. A reasonable fact finder could conclude that Ms. Burgess' choice to re-phrase defense counsel's question from "[w]hat money are you *claiming* in this case" to "[w]hat money am I *expecting* in this case" supports plaintiffs' theory that while Ms. Burgess did not intend to officially disclaim any right to collect damages, financial remuneration was not the motivating factor in her decision to pursue the litigation.

It is well-settled that: "When doubt exists concerning certification of the class, the court should err in favor of allowing the case to proceed as a class action." *Williams v. Em-*

---

**6.** Even assuming the Eighth Circuit declined to endorse these "implicit requirements," as discussed below, the Court finds the Iowa class also fails to meet the numerosity requirement under Rule 23(a)(1).

*pire Funding Corp.,* 227 F.R.D. 362, 371 (E.D.Pa.2005) (internal citation omitted); *see also Harrington v. City of Albuquerque,* 222 F.R.D. 505, 508 (D.N.M.2004) (citing *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968)); *Adair v. England,* 209 F.R.D. 5, 8 (D.D.C. 2002); *In re Cardizem CD Antitrust Litigation,* 200 F.R.D. 297, 303 (E.D.Mich.2001). Accordingly, the Court will presume for purposes of this motion that Ms. Burgess qualifies as a member of the federal class and will proceed with the Rule 23(a) analysis.

### 2. Numerosity

The first *explicit* Rule 23(a) requirement is that the "class be so numerous that joinder of all members is impracticable." Fed. R.Civ.P. 23(a)(1). Courts consider several factors relevant in analyzing "numerosity," such as the number of persons in the proposed class, the type of action at issue, the monetary value of the individual claims and the inconvenience of trying each case individually. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 559 (8th Cir.1982).

The Eighth Circuit has not established any "rigid rules regarding the necessary size of classes." *Emanuel v. Marsh,* 828 F.2d 438, 444 (8th Cir.1987), *rev'd on other grounds,* 487 U.S. 1229, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988). Many courts outside of the Eighth Circuit, however, have found a class of at least forty members to presumptively satisfy the numerosity requirement. *See, e.g., Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995); *Ansari v. New York Univ.,* 179 F.R.D. 112, 114 (S.D.N.Y.1998); *Davis v. Northside Realty Assoc., Inc.,* 95 F.R.D. 39, 43 (N.D.Ga.1982).

Based on data produced by defendants, plaintiffs estimate that their proposed modifications reduce the number qualifying under the "federal class" to "tens of thousands." *See* October 6, 2004 Affidavit of Wood Foster, Tab 4. Defendants have not seriously disputed these figures, and the Court finds the numerosity requirement is satisfied with respect to the federal class.

■ Even assuming the Iowa class met the implicit requirements of Rule 23(a), however, no data exists to substantiate numerosi-

ty for this class. Although plaintiffs stated in their initial memorandum that approximately "hundreds" of persons would qualify, it is obvious to the Court this number is pure speculation. Other than the named plaintiffs, counsel has produced no evidence of any other persons who would fall within the "Iowa class." Because plaintiffs have failed to fulfill their burden on this issue, the Court finds that joinder of all members of this class is not "impractical." Persons who fall within this class but not the federal class may proceed with individual claims.

The remainder of the discussion will focus solely on the "federal class."

### 3. Commonality

■ Rule 23(a)(2) also requires the presence of common issues of law and fact. Fed. R.Civ.P. 23(a)(2). To establish "commonality" for purposes of this subsection, it is not necessary to demonstrate *every* question of law or fact is common to each member of the class. *Paxton,* 688 F.2d at 561. Rather, the issues linking the class members must be "substantially related" to resolution of the case. *Id.; see also DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir.1995) (quoting *Paxton*).

In the present case, plaintiffs allege the claims of all members turn on the same legal issue: whether defendants' conduct as directed toward plaintiffs violated federal law regulating collection practices. Plaintiffs' Memorandum in Support of Motion for Class Certification at 10. In addition, because ACCS has been shown to operate its program in a consistent manner from one county to another, "there is no distinct issue that destroys commonality." *Id.*

For purposes of this motion, defendants do not dispute that common questions of law or fact exist, and the Court finds the commonality requirement under Rule 23(a)(2) is satisfied.

### 4. Typicality

In addition to the numerosity and commonality requirements, Rule 23(a) also requires a showing that the "claims or defenses of the representative parties are typical of

the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). In general, typicality is established if the claims of all members arise from a single event or share the same legal theory. *Paxton*, 688 F.2d at 561–62. If the legal theories of the representative plaintiffs are the same or similar to those of the class, slight differences in fact will not defeat certification. *See De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983); *see also Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996).

In the present case, all members of the purported class are proceeding under the theory that defendants' conduct violated the FDCPA. The Court finds this shared theory satisfies the minimal burden plaintiffs must meet to show typicality.[7] *See DeBoer*, 64 F.3d at 1174 ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff.").

### 5. Adequacy of Representation

The last explicit requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To satisfy this requirement, plaintiffs must show: 1) their attorneys are qualified to pursue the litigation; and 2) plaintiffs' interests are not "antagonistic" to the interests of others in the class. *See, e.g., In re Monosodium Glutamate Antitrust Litig.*, 205 F.R.D. 229, 232 (D.Minn.2001).

The Court finds the first factor is easily satisfied. Plaintiffs have retained experienced class-action counsel who have vigorously represented plaintiffs' interests to date.

 Defendants dispute plaintiffs' ability to satisfy the second factor, again arguing that Ms. Burgess' personal interest in the litigation may not coincide with that of the majority of the class. Ms. Burgess' interest in the litigation, and whether she has waived her individual right to recover money damages, is a fact issue that will not alone defeat certification. Furthermore, Ms. Burgess' implicit rejection of defendants' offer of judgment in April 2001, coupled with her willing participation in numerous discovery and deposition requests, satisfies the Court of her commitment to the litigation.[8]

 Defendants also challenge Ms. Burgess' overall credibility based on her previous financial irresponsibility.[9] The Court rejects this argument, finding that Ms. Burgess' demonstrated commitment to this litigation overrides her history of writing bad checks. *But see Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257 (D.Minn.2001) (suggesting that "financial responsibility has at least some remote relevance to [plaintiffs'] responsibility as a whole") (internal citation omitted). After reviewing excerpts from Ms. Burgess' deposition testimony, the Court is confident she has a general understanding of the nature of the case and the potential remedies available.[10]

---

7. The Court will address defendants' argument that Ms. Burgess' personal goals for the litigation may be antagonistic to those of other class members in the context of the "adequacy" requirement, below.

8. Defendants cite to *Perovich v. Humphrey*, 1997 WL 674975 at *6 (N.D.Ill.1997) for the premise that a plaintiff proceeding solely on "principle" cannot adequately represent a class seeking monetary damages. As stated above, it is not clear Ms. Burgess has waived her right to recover monetary damages in the present case. Secondly, the *Perovich* court based its reasoning on the possibility that the representative plaintiffs might refuse to accept a settlement offer that was beneficial to the class but lacked the "certain degree of contrition" desired by the representative plaintiffs. *Id.* Again, Ms. Burgess' implicit rejection of defendants' Rule 68 offer of judgment, as well as her later acquiescence in the now-defunct Settle-

ment Agreement, demonstrates her willingness to act in the best interest of the class as a whole.

9. Defendants also challenge the credibility of Ms. Liles, Ms. Reynolds and Mr. Mettler, noting that each has a history of financial irresponsibility, and that Ms. Reynolds and Mr. Mettler have criminal histories. Because the Court has declined to certify the Iowa class on other grounds, however, it need not determine whether these issues render Mr. Liles, Mr. Mettler and Ms. Reynolds inadequate representatives under Rule 23(a)(4).

10. In their surreply, defendants criticized plaintiffs' newest class description as having no rational basis, arguing that plaintiffs' counsel has shown a tendency to "dump" plaintiffs to avoid overlap with other national classes. The Court assures defendants that now that a class has been certified, no further amendments will be authorized.

E. Rule 23(b)(3)-Predominance and Superiority Test

Assuming plaintiffs, through Ms. Burgess, are able to satisfy the requirements of Rule 23(a) with respect to the federal class, they must also satisfy one of the three subsections of Rule 23(b). *See Paxton,* 688 F.2d at 563. In the present case, plaintiffs contend the proposed definitions satisfy Rule 23(b)(3), which requires a showing that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.*" Fed.R.Civ.P. 23(b)(3) (emphasis added).

### 1. Predominance

■ Rule 23(b)(3)'s requirement that common questions predominate over individual questions "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Although some overlap does exist, the fact that a proposed class meets the *commonality* requirement under Rule 23(a)(2) does not necessarily mean it also will satisfy Rule 23(b)(3). As aptly summarized by the district court in *Dumas v. Albers Medical, Inc.,* 2005 WL 2172030 at *3 (W.D.Mo. Sept.7, 2005):

> In determining whether the plaintiff has met Rule 23(b)(3)'s more stringent requirement that common issues predominate over individual issues, the court inquires into the nature of the evidence required to prove the case. *Blades,* 400 F.3d at 566. If, to make a prima facie showing on a given question, the members of a proposed class must present evidence that varies from member to member, then it is an individual question for purposes of Rule 23(b)(3); if the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

As with the commonality requirement, however, the presence of individual issues such as damages does not automatically preclude a finding of predominance under Rule 23(b)(3). *See, e.g., Sonmore,* 206 F.R.D. at 264.

■ To make a prima facie showing in this case, it appears each class member will have to show that he or she received defendants' form letter regarding the diversion program and subsequently paid money to defendants. All of this information necessarily derives from defendants' own data, and therefore, undoubtedly will be stipulated at trial. The primary disputed issues are whether defendants' communications with plaintiffs were improper under the FDCPA; and if so, the appropriate remedies. The first of these issues is common to all class members, as are the statutory damages to which each class member is entitled. Although *actual* damages must be determined on an individual basis, this fact does not override the overwhelming predominance of common issues. The Court finds the predominance factor is satisfied

### 2. Superiority

Rule 23(b)(3) also directs that the Court determine whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Among the factors to consider during this analysis are "the interests of members of the class in individually controlling the prosecution or defense of separate actions," and "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3)(A) & (D).

■ Defendants contend a class action is not superior to individual actions due to the fact the potential damage recovery for each class member is less than the amount each person could recover if they chose to bring individual actions. As argued by defendants, an individual plaintiff may recover up to $1,000 in statutory damages under the FDCPA. 15 U.S.C. § 1692k(a)(2)(A). As part of a class action, however, absent class members are entitled to "such amount as the court may allow ... without regard to a minimum individual recovery, not to exceed the lessor of $500,000 or 1 per centum of the net worth of the debt collector," plus actual

damages and attorneys fees. *Id.* § 1692k(a)(2)(B)(ii).

Defendants have produced evidence that as of December 31, 2000, ACCS had a net worth of $740,000. Defs.App. At 139–142. Plaintiffs have no evidence to refute this figure. Pursuant to § 1692k(a)(2)(A), the maximum statutory damages available to the federal class is $7,400 (the lesser of $500,000 or 1 per cent of the debt collector's net worth). Assuming a class size of 10,000, this would amount to as little as $.74 per person in statutory damages. *See, e.g., Sonmore,* 206 F.R.D. at 265 ("by certifying the class the Court would insure a *de minimus* monetary recovery for class members, which constitutes a substantial reduction in what class members may otherwise be entitled by pursuing their claims individually.").

Plaintiffs distinguish *Sonmore* on the basis that the federal class seeks not only statutory damages, but actual damages, *i.e.* the amount they paid to ACCS for the diversion program. *See, e.g., Egge v. Healthspan Services Co.,* 208 F.R.D. 265, (D.Minn.2002) (finding fact class members would be entitled to actual damages *in addition to* statutory damages satisfactorily distinguished action from *Sonmore* ). As explained by the Seventh Circuit in *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997):

> [A] de minimus recovery ... should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.... True, the FDCPA allows for individual recoveries of up to $10000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

Because all other factors of Rule 23 are satisfied with regard to the federal class, and Ms. Burgess has shown a willingness to proceed with the class action regardless of any impact on her personal recovery, the Court is inclined to find certification of the federal class to be superior to other methods of adjudication.

### F. Conclusion Regarding Certification and Motion to Amend Class Definition

For the reasons outlined above, the Court finds plaintiffs have satisfied the explicit and implicit requirements of Rule 23(a) and 23(b)(3) with respect to the federal class only. Plaintiffs' October 7, 2004 motion to certify and August 18, 2005 motion to amend the class description are granted in part and denied in part.

In reaching this conclusion, the Court acknowledges its seeming inconsistency with the Court's September 27, 2004 Order setting aside the Settlement Agreement, in which the Court was critical of a per person recovery of less than $1.00. The current record and class description vary markedly from the record and class description facing the Court in early 2004, however.

First, a class size in the "tens of thousands" is far more manageable than a class with more than 600,000 potential members. Significantly, lead plaintiffs' counsel assured the Court during the September 23, 2005 hearing that notification by first-class mail to the newly-amended class was within his means and ability. This assurance is highly relevant to the Court's inquiry under Rule 23(b)(3)(D).

Secondly, although the possibility of a de minimus recovery still exists, the fact plaintiffs are not limited to a defined—and rapidly depleting—settlement fund allows them to seek actual as well as statutory damages to the extent of defendants' reachable assets. Lastly, the Court cannot overlook the existence of parallel litigation proceeding in other states under the guidance of counsel who have proven themselves extremely aggressive. It is the Court's view that if it were to deny certification of the federal class, it would only be a matter of time before intervenors' counsel filed a new purported class action within Iowa and/or other states covered by the federal class. Commencing this

process all over again supports neither judicial economy, nor the sanity of this Court.

Within twenty (20) days of the date of this Order, plaintiffs are directed to submit a "Fourth Amended Complaint" reflecting the changes to paragraph 31 set forth in their August 18, 2005 motion to amend/correct class description. Paragraph 32 and other references to the "Iowa class" should be stricken from the complaint. In addition, the "Fourth Amended Complaint" should be revised to indicate that plaintiffs Lori Liles, Rebecca Reynolds and Robert Mettler are proceeding as individuals and not as members of a certified class.

## II. MOTION TO DISMISS INTERVENORS, MOTION TO AMEND AMENDED COMPLAINT

Based on a the response filed by the intervenors on October 25, 2004, and defense counsels' statements during the September 23, 2005 telephone conference, plaintiffs' October 7, 2004 motion to dismiss the intervenors is granted. If counsel for the intervenors wish to continue to receive pleadings in this matter, they may contact the Clerk of Court to make such arrangements independent of this Order.

For the reasons expressed in the body of this Order, the Court finds plaintiffs' October 12, 2004 motion to amend/correct the amended complaint is not futile. The motion is granted to the extent plaintiffs' counsel are directed to submit a *Fourth* Amended Complaint containing the revisions set forth in part 1(F) above.

IT IS ORDERED.